531 So.2d 961 (1988)
STATE of Florida, Petitioner,
v.
Pedro PEREZ, Respondent.
No. 70971.
Supreme Court of Florida.
October 6, 1988.
Robert A. Butterworth, Atty. Gen. and Joseph R. Bryant, Asst. Atty. Gen., Tampa, for petitioner.
James Marion Moorman, Public Defender and Brad Permar, Asst. Public Defender, Clearwater, for respondent.
EHRLICH, Chief Justice.
We have for our review State v. Perez, 510 So.2d 1144 (Fla.2d DCA 1987), in which the district court certified the following question as having great public importance:
WHERE A DRIVER OF A MOTOR VEHICLE IS INVOLVED IN A MOTOR VEHICLE ACCIDENT AND IS THE ONLY PERSON TO SUSTAIN BODILY INJURY, MAY A LAW ENFORCEMENT OFFICER WHO HAS PROBABLE CAUSE TO BELIEVE THAT THE DRIVER IS UNDER THE INFLUENCE OF ALCOHOLIC BEVERAGES OR CONTROLLED SUBSTANCES REQUIRE THE DRIVER TO SUBMIT TO A BLOOD TEST UNDER SECTION 316.1933(1) EVEN THOUGH THE DRIVER OBJECTS THERETO?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We conclude that section 316.1933(1), Florida Statutes (1985), applies only to a driver who has injured or killed another person in a motor vehicle accident; consequently, that section does not require a driver to submit to a blood test when the driver is the only party injured.
*962 Respondent Perez was the driver of a vehicle involved in a traffic accident with another vehicle.[1] Arriving upon the scene, the investigating officer found Perez undergoing treatment from paramedics for an apparently serious head wound. No other party to the accident had been injured substantially.
Detecting the smell of alcohol on Perez' breath, the officer instructed the paramedics to draw a blood sample from Perez in order to determine his blood-alcohol content. Perez objected to drawing the sample but stated he would consent to a pre-arrest breath test. The officer informed respondent that the blood would be drawn regardless. Subsequent analysis of the sample obtained revealed a blood-alcohol content of 0.161%. Perez was accordingly cited for driving under the influence in violation of section 316.193(1), Florida Statutes (1985).
Perez moved to suppress the blood-test evidence at trial, claiming the sample was drawn illegally. The trial court stated that it believed the sample had been drawn lawfully pursuant to section 316.1933(1), which provides:
Notwithstanding any recognized ability to refuse to submit to the tests provided in s. 316.1932 or any recognized power to revoke the implied consent to such tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages or controlled substances has caused the death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer, to a test of his blood for the purpose of determining the alcoholic content thereof or the presence of chemical substances as set forth in s. 877.111 or controlled substances therein. The law enforcement officer may use reasonable force if necessary to require such person to submit to the administration of the blood test. The blood test shall be performed in a reasonable manner. The term "serious bodily injury" means a physical condition which creates a substantial risk of death; serious, personal disfigurement; or protracted loss or impairment of the function of any bodily member or organ.
(Emphasis added.) Despite the trial court's belief that the sample was lawfully drawn, it granted Perez' motion to suppress on the authority of State v. Prues, 478 So.2d 1196 (Fla. 4th DCA 1985). In Prues, the district court held that the statute authorizes a blood test only where a person other than the suspect driver has been killed or seriously injured. The trial court's ruling herein was affirmed by the Second District Court of Appeal, which certified the question before us.
The state contends that the statute's reference to a "human being" was meant to include both impaired drivers who injure only themselves as well as drivers who injure other persons. We reject that interpretation for several reasons.
Initially we note that it is our duty in construing a statute to effectuate the intent of the legislature. Parker v. State, 406 So.2d 1089, 1092 (Fla. 1981); Armstrong v. City of Edgewater, 157 So.2d 422, 425 (Fla. 1963). The legislative intent is determined primarily from a statute's language. St. Petersburg Bank and Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla. 1982). This Court will follow the literal, plain meaning of the language unless such an interpretation would lead to an absurd or illogical result. Id.
A literal interpretation of the section at issue leads to an illogical result. The term "human being," as used in the statute, refers to the one to whom a driver believed to be under the influence "has caused death or serious bodily injury"; the disjunctive "or" means either condition can apply. See Sparkman v. McClure, 498 So.2d 892, 895 (Fla. 1986) ("the word `or' is generally construed in the disjunctive when used in a statute or rule" (citations omitted)). *963 Immediately following these alternative conditions, the statute provides that the suspect driver "shall submit, upon the request of a law enforcement officer, to a test of his blood." To "submit" means something more in this context than merely being physically incapable of preventing the blood test. It is a mandate to yield to a test, and it supersedes "any recognized ability to refuse to submit to the tests provided in section 316.1932 or ... to revoke the implied consent to such tests." To refuse, to revoke, to submit  all are conscious, affirmative actions. Thus, if the driver is the human being to which the statute refers, he must consciously yield to a blood test when he has caused his own serious injury or his own death. Obviously, though he may be able to submit if he is only injured, he cannot submit to anything if he is dead. The result thus obtained under the state's interpretation is clearly illogical.
Moreover, this problem in logic cannot be circumvented by merely ignoring the phrase "or has caused the death of" where, as here, the driver is the only party seriously and physically affected. We are bound by the definite phraseology in a statute. Florida State Racing Comm'n v. Bourquardez, 42 So.2d 87, 88 (Fla. 1949). We are to give effect to every clause of a statute. State ex rel. City of Casselberry v. Mager, 356 So.2d 267, 269 (Fla. 1978). Consequently, we must apply both clauses in the present statute  one dealing with injury, the other with death  to the term "human being." The illogical result obtained by interpreting "human being" to include the suspect driver is thus patently unavoidable, hence the term must refer to someone other than the driver.
In contrast to the result suggested by the state's interpretation, the conclusion obtained from a full reading of the entire statute in its context is eminently reasonable. See Villery v. Florida Parole and Probation Comm'n, 396 So.2d 1107, 1111 (Fla. 1980) (where possible, court will give full effect to all statutory provisions and construe related provisions in harmony with one another); State v. Rodriguez, 365 So.2d 157, 159 (Fla. 1978) (to determine legislative intent, court will view entire statute).
Sections 316.193 through 316.1934, Florida Statutes (1985), address the offense of driving under the influence of alcohol, or chemical or controlled substances. Section 316.1932(1)(a) provides that motorists in this state will be deemed to have given their consent for a breath test and a urine test, pursuant to a lawful arrest, for an alleged offense committed while driving under the influence of "chemical substances set forth in s. 877.111 or controlled substances." Subsection (b) provides that a person whom an officer suspects of driving while impaired may consent in writing to, or may demand, a pre-arrest breath test.[2] Thus, the general scheme for determining if a motorist is impaired is: (1) before an arrest, the suspect may consent to or demand a breath test; and (2) after an arrest, the person is deemed to have implicitly consented to a breath test and a urine test.
The first exception to this general scheme is given in section 316.1932(1)(c), whereby a "person whose consent is implied," i.e., is lawfully arrested, is taken for treatment to a medical facility and a breath or urine test is impossible or impractical to perform. Only then may a blood test be requested, subject to the person's refusal. The subsection further provides penalties for such a refusal but does not authorize the officer to proceed with the test regardless of the refusal.
The other exception to the general scheme of breath and urine testing is found in section 316.1933(1), the statute in question. Again, this statute expressly authorizes blood tests where an officer has probable cause to believe an impaired driver has caused death or serious injury to a human being. In short, these sections together narrowly define the circumstances in which *964 testing for impairment is allowed absent express consent, and they carve out two narrow exceptions to the scheme which allow blood tests.
Section 316.193 delineates the offenses committed when driving impaired. Subsection (1) defines "driving under the influence" of "any chemical substance set forth in s. 877.111"  the same substances to be determined by the general breath/urine testing scheme described in section 316.1932. Subsection (2) lists the penalties incurred for driving under the influence.
Section 316.1931(2) is an exception to that penalty scheme. Under this latter section, certain acts committed while driving impaired are considered more serious and carry more severe penalties than the offense discussed in section 316.193. Specifically, when an impaired driver damages the "property or person of another," he is guilty of a first degree misdemeanor. § 316.1931(2)(a), Fla. Stat. (1985). When an impaired driver causes "serious bodily injury to another," he is guilty of a third degree felony if at the time of the offense he: "1. [h]ad a suspended or revoked driver's license; 2. [w]as a habitual traffic offender as defined in s. 322.264; or 3. [h]ad been previously convicted of a violation of this subsection." § 316.1931(2)(b), Fla. Stat. (1985).
It is significant that this last provision, section 316.1931(2)(b), refers to the section at issue, section 316.1933, for a definition of the term "serious bodily injury." There is no dispute that the instant statute authorizes a blood test when the suspect driver has caused such injury to another person. The deviation in that situation from the general breath/urine testing scheme parallels the deviation, by way of an enhanced penalty in section 316.1931(2), from the general DUI penalty scheme in section 316.193(1)(2). It is at least syllogistically logical, therefore, that because there is no enhanced penalty where an impaired driver causes only his own serious injury, there should be no deviation in that situation from the general testing scheme.
This same reasoning applies to section 316.1931(2)(c), which describes the more severe offense committed and penalty incurred by the impaired driver who causes "the death of any human being." In this context "human being" must refer to someone other than the driver; otherwise, he would be subject to the penalties of that section where he has caused his own death, and posthumous prosecution has never been a practice in this state. The most probable reading of section 316.1931(2)(b), (c), consequently, is that it encompasses all of the circumstances contemplated in section 316.1933 for which blood testing will be allowed: seriously injuring or killing someone other than the suspect driver.
This does not mean, of course, that those who drive under the influence and injure only themselves will not be subject to testing and prosecution. They will still be subject to the breath and urine tests authorized by section 316.1932 and subject to a blood test where the former tests are impossible or impractical. Of course they will be subject to the penalties for driving while impaired as provided in section 316.193(2).
In sum, we conclude that a law enforcement officer who has probable cause to believe a driver is under the influence of alcoholic beverages or controlled substances may require that driver to submit to a blood test under section 316.1933(1), Florida Statutes (1985), only when the driver has caused the death of or serious bodily injury to someone other than himself.[3] Accordingly, *965 we approve the decision of the district court below.
It is so ordered.
OVERTON, SHAW, BARKETT and KOGAN, JJ., concur.
McDONALD, J., dissents with an opinion, in which GRIMES, J., concurs.
McDONALD, Justice, dissenting.
The statute under discussion, section 316.1933(1), Florida Statutes (1985), authorizes the involuntary drawing of blood from a suspected drunk driver when that driver's vehicle has caused the death or serious bodily injury of a human being. The statute does not say another human being or a third party human being. The driver is a human being and qualifies for the drawing of blood whether the driver or another person is injured. I suggest that the plain meaning rule for construing statutes requires the application of section 316.1933(1) to include the driver when he is seriously injured regardless of the absence of injury to another person. Drunk driving is a menace to all of society, including drivers. I perceive a valid legislative reason to carefully examine all injured drunk drivers for intoxication in an effort to gather statistics, judge safety standards, and take other actions to minimize drunk driving accidents  whether third parties are involved or not.
GRIMES, J., concurs.
NOTES
[1] The opinion of the district court of appeal erroneously concludes that Perez was the only one involved in the accident.
[2] The provision relating to a driver consenting to or demanding a pre-arrest breath test, contained in section 316.1932(1)(b), Florida Statute (1985), has been repealed by the legislature, effective July 1, 1988. Ch. 88-5, § 3, Laws of Fla.
[3] Further support for this conclusion can be found in the recent legislative revisions to the statutory scheme regarding driving a motor vehicle while under the influence. Although the title of the bill declares that it is providing "clarifying language" with respect to certain provisions, it states that the act is "amending" section 316.1933. This language therefore indicates a legislative recognition that the section, as it existed in 1985, did not provide for submission by a driver to a blood test when he has caused serious bodily injury only to himself. As amended, "serious bodily injury" is redefined to mean "an injury to any person, including the driver, which consists of a physical condition that creates a substantial risk of death; serious, personal disfigurement; or protracted loss or impairment of the function of any bodily member or organ." Ch. 88-5, § 4, Laws of Fla. (emphasis added).