536 So.2d 375 (1988)
STATE of Florida, Appellant,
v.
Richard Joseph BURNETT, Appellee.
No. 88-1639.
District Court of Appeal of Florida, Second District.
December 30, 1988.
*376 Robert A. Butterworth, Atty. Gen., Tallahassee, and Joseph R. Bryant, Asst. Atty. Gen., Tampa, for appellant.
Elliott C. Metcalfe, Jr., Public Defender, and Linda Mason, Asst. Public Defender, Sarasota, for appellee.
PARKER, Judge.
The county court has certified to this court the following two questions of great public importance:
I. DOES SECTION 316.1932(1)(c),[1] FLORIDA STATUTES (SUPP. 1986) PROHIBIT A LAW ENFORCEMENT OFFICER FROM ADVISING A SUSPECT OF THE "IMPLIED CONSENT" WARNINGS FOR A BLOOD ALCOHOL TEST, IF THAT SUSPECT APPEARS AT A HOSPITAL, CLINIC, OR OTHER MEDICAL FACILITY BUT NOT AS A RESULT OF HIS INVOLVEMENT AS A DRIVER IN A MOTOR VEHICLE ACCIDENT; AND, IF SO, DOES SUCH ACTION THEREBY RENDER INVOLUNTARY THE SUSPECT'S CONSENT TO THE BLOOD ALCOHOL TEST WHERE THE SUSPECT IS NOT EXPRESSLY INFORMED THAT THE IMPLIED CONSENT LAW REQUIRES SUBMISSION ONLY TO A BREATH OR URINE TEST OR THAT THE BLOOD TEST IS OFFERED ONLY AS AN ALTERNATIVE?
II. DOES SECTION 316.1932(1)(c), FLORIDA STATUTES (SUPP. 1986) PROHIBIT A LAW ENFORCEMENT OFFICER FROM ADVISING A SUSPECT OF THE "IMPLIED CONSENT" WARNINGS FOR A BLOOD TEST, IF THE SUSPECT WAS ARRESTED FOR DRIVING UNDER THE INFLUENCE (DUI), AND WAS NOT INVOLVED IN A MOTOR VEHICLE ACCIDENT, BUT DUE TO INJURIES UNCONNECTED TO THE DRIVING OF THE AUTOMOBILE, AND WHICH OCCURRED AFTER ARREST, THE SUSPECT APPEARS AT A HOSPITAL, CLINIC, OR OTHER MEDICAL FACILITY, AND SAID INJURIES RENDER THE SUBMISSION TO A BREATH TEST IMPOSSIBLE OR IMPRACTICABLE?
Both questions appear to be ones of first impression by the reported decisions of appellate courts of this state. We answer both questions in the affirmative.
Burnett was stopped for speeding and placed under arrest for driving under the influence of alcohol (DUI). He was transported to the Sarasota County Jail. While in the custody of detention officers, Burnett was injured, suffering the loss of his front teeth and a broken nose. Although the cause of the injuries is in dispute, it is *377 uncontested that Burnett was not involved in a motor vehicle accident in connection with his DUI charge.
One of the arresting officers determined that a blood draw would be made, because a breath test would not be feasible due to Burnett's injuries. An officer read to Burnett the "implied consent" warnings. The substance of the warnings was that if Burnett refused to consent to the blood draw, his license would be suspended and his refusal would be used against him in court. Based upon these warnings, given both at the jail and at the hospital, Burnett consented to the blood draw.
Burnett thereafter filed a motion to suppress the blood alcohol sample and test results from the sample. The county court judge granted the motion, and the state appealed the suppression order to the circuit court. The county court judge then entered an order certifying the questions to this court. In her order, the judge made the following conclusions of law:
[W]here a suspect is in custody and under arrest for driving under the influence, and where that suspect has not appeared at a hospital, clinic, or other medical facility as a result of his involvement as a driver in a motor vehicle accident, Florida Statutes 316.1932(1)(c) (1986) [sic], prohibits the law enforcement officer from advising that suspect of the "implied consent" warnings for a blood test. If such warnings are nevertheless rendered, and the suspect is not expressly informed that the implied consent law requires submission only to a breath or urine test, and that the alcohol test is offered as an alternative, the suspect's consent to the blood alcohol test is not voluntarily made.
Addressing the first question, we apply the rule of statutory analysis that "where the language of the statute is so plain and unambiguous as to fix the legislative intent and leave no room for construction, the courts should not depart from the plain language used by the legislature." Citizens of the State v. Public Service Comm'n, 425 So.2d 534, 541-42 (Fla. 1982) (citing Carson v. Miller, 370 So.2d 10 (Fla. 1979)). Further, "in those instances `where the language of a statute clearly limits the application to a particular class of cases, leaving no room for doubts as to the meaning of the legislature, the statute may not be enlarged or expanded to cover cases not falling within its provisions.'" Barruzza v. Suddath Van Lines, Inc., 474 So.2d 861, 864 (Fla. 1st DCA 1985) (quoting 49 Fla. Jur.2d, Statutes § 118 (1984)).
The language of section 316.1932(1)(c) is clear that the following two requirements must be present before that section is applicable: (1) The individual tested must appear for treatment at a hospital, clinic, or medical facility as a result of his involvement as a driver in a motor vehicle accident and (2) the administration of a breath test or urine test must be impossible or impractical. State v. Hilton, 498 So.2d 698, 700 (Fla. 5th DCA 1986), petition for review denied, 506 So.2d 1041 (1987). Here, the first requirement was not met. Accordingly, section 316.1932(1)(c) was not applicable to this situation; therefore, the implied consent warning should not have been given to Burnett.
In order for a consent to be effective, the consent must have been freely and voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The finding of whether a consent was voluntary is determined from the totality of all the circumstances. Schneckloth, 93 S.Ct. at 2047-48. In this case, the trial court's determination that Burnett's consent was not voluntarily given because it was based upon the misinformation provided to Burnett by the officer while Burnett was in custody is supported by the record and will not be disturbed by this court. Accordingly, the first question must be answered in the affirmative.
The second question, however, poses a dilemma. What can law enforcement do if a suspect sustains injuries unrelated to a motor vehicle accident and his injuries render the submission to a breath test impossible or impractical? The legislature has *378 provided for only two instances when a blood draw may be performed in place of a breath test.[2]State v. Perez, 531 So.2d 961 (Fla. 1988). The first circumstance in which blood may be drawn is set forth in section 316.1932(1)(c), which has been discussed above. The second occasion is described in section 316.1933(1)[3] which authorizes a blood test where an officer has probable cause to believe an impaired driver has caused death or serious injury to another human being. The situation presented in question two does not fall within these statutes. If a provision covering the circumstances presented under the second certified question is desirable, it must be done legislatively and not judicially. Accordingly, we answer the second question also in the affirmative.
Having answered both questions in the affirmative, we find no error in the county court's order granting the suppression of the results of Burnett's blood alcohol test.
CAMPBELL, C.J., and THREADGILL, J., concur.
NOTES
[1] This statute provides:

Any person whose consent is implied as provided in this section shall be deemed to have consented to an approved blood test for the purpose of determining the alcoholic content of the blood or a blood test for the purpose of determining the presence of chemical substances or controlled substances as provided herein if such person appears for treatment at a hospital, clinic, or other medical facility as a result of his involvement as a driver in a motor vehicle accident and the administration of a breath or urine test is impractical or impossible. The blood test shall be performed in a reasonable manner. Any person who is incapable of refusal by reason of unconsciousness or other mental or physical condition shall be deemed not to have withdrawn his consent to such test. A blood test may be administered whether or not such person is told that his failure to submit to such a blood test will result in the suspension of his privilege to operate a motor vehicle upon the public highways of this state. Any person who is capable of refusal shall be told that his failure to submit to such a blood test will result in the suspension of his privilege to operate a motor vehicle for a period of 1 year for a first refusal, or for a period of 18 months if the driving privilege of such person has been suspended previously as a result of a refusal to submit to such a test or tests. The refusal to submit to a blood test upon the request of a law enforcement officer shall be admissible in evidence in any criminal proceeding.
[2] The Fourth District Court of Appeal has held that a person may consent to a blood test if the person is fully informed that the test is being offered as an alternative to a breath test and the consent is knowingly and voluntarily made and not the result of acquiescence to lawful authority. Chu v. State, 521 So.2d 330, 332 (Fla. 4th DCA 1988).
[3] This statute provides:

(1) Notwithstanding any recognized ability to refuse to submit to the tests provided in s. 316.1932 or any recognized power to revoke the implied consent to such tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages or controlled substances has caused the death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer, to a test of his blood for the purpose of determining the alcoholic content thereof or the presence of chemical substances as set forth in s. 877.111 or controlled substances therein. The law enforcement officer may use reasonable force if necessary to require such person to submit to the administration of the blood test. The blood test shall be performed in a reasonable manner. The term "serious bodily injury" means a physical condition which creates a substantial risk of death; serious, personal disfigurement; or protracted loss or impairment of the function of any bodily member or organ.