598 So.2d 150 (1992)
STATE of Florida, Appellant,
v.
Michael William POLAK, Gary Clinton Smith, Travis Berlin Pelt, Christopher J. Stockwell, Dawn Suzanne Williams, Michael Olson, Rodney E. Martin, Gerald Caldwell, Lonnie Beeman, Bonnie Murphy and Paul Brand, Appellees.
No. 91-2100.
District Court of Appeal of Florida, First District.
April 17, 1992.
Robert A. Butterworth, Atty. Gen., and Suzanne G. Printy, Asst. Atty. Gen., Tallahassee, for appellant.
Lee Meadows, Samuel M. Proctor, and Dean Morphonios, Tallahassee, for appellee.
*151 ERVIN, Judge.
In this criminal appeal, the state challenges a nonfinal county court order suppressing the results of chemical breath tests administered to appellees, the defendants below. The two questions raised are whether the county court correctly determined that the Tallahassee Police Department (TPD) had substantially modified the Intoximeter 3000 Revision B-1 (I-3000 Rev. B1 or intoximeter) (an alcohol breath test device) when it bypassed its Taguchi Sensor Cell (T-cell),[1] thereby requiring recertification or reapproval of the device, and whether the county court correctly suppressed the results of the tests administered with the I-3000 Rev. B1 on the basis of involuntary consent. We answer both questions in the affirmative and affirm.
The appellees in this case, with the exception of appellee Rodney E. Martin, were each arrested by the TPD and charged with DUI between October 26, 1990 and January 23, 1991.[2] Each defendant submitted to a breathalyzer test, which was performed on the I-3000 Rev. B1, Serial No. 3707, after being informed of the implied consent warnings set out in Section 316.1932(1)(a), Florida Statutes (1989), namely, refusal to take an approved chemical test would result in suspension of the person's license and use of his or her refusal as evidence at trial.[3] The test results ranged from .11 to .23 percent blood alcohol content. The individual cases were consolidated below for the purpose of the motions at issue.
The defendants filed a motion in limine requesting the court to limit the state's use of the intoximeter test results, because the device had been modified in that the T-cell had been bypassed and/or overridden. The defendants contended that since the machine was modified, it was no longer an "approved" instrument; therefore, it could not be said that the defendants had consented under section 316.1932(1)(a) to an "approved" test. After considering evidence produced by both sides, the county judge ruled that the bypass of the T-cell was a substantial modification which required recertification or reapproval of the instrument.[4] The judge therefore granted *152 the defendants' motion and ruled that the state could not rely on rules promulgated by the Department of Health and Rehabilitative Services (HRS) to supplant traditional predicates for introduction of scientific test results at trial.
The defendants next filed a motion to suppress the test results, arguing that because the modification required reapproval of the testing device, the intoximeter was no longer an "approved" testing instrument, and because they had consented under section 316.1932(1)(a) to submit only to an "approved" chemical test, it could not be said that they had voluntarily consented to submit to the unapproved test that was actually performed. Following a hearing held on this motion, the county judge entered an order suppressing the test results, ruling that the state was precluded from introducing the results even if it established the admissibility of the scientific evidence pursuant to traditional predicates. In so concluding, the county judge certified the following two questions to this court as issues of great public importance:
(a.) Is the bypass of the T[a]guchi Sensor such a modification of the breath instrument that it is no longer an "approved" instrument under Florida Statutes, Section 316.1932(1)(b) or Rules 10D-42.022, F.A.C.?
(b.) If yes, is the State precluded from otherwise establishing a scientific predicate for admission of the test results when the breath sample tested was obtained by reading the implied consent warnings which erroneously advised Defendants they were taking an approved test and that refusal to take it would result in license revocation and admissibility of the refusal at trial. [Footnote omitted.]
In regard to the first issue, the county court's ruling was made in response to the defendants' motion in limine. Our standard of review of a lower tribunal's ruling on a motion in limine is abuse of discretion.[5]Saavedra v. State, 576 So.2d 953, 961 (Fla. 1st DCA), jurisdiction accepted, 584 So.2d 999 (Fla. 1991); O'Hara v. State, 554 So.2d 26, 26 (Fla. 1st DCA 1989). A motion in limine is one in effect suppressing evidence, State v. Palmore, 495 So.2d 1170, 1171 (Fla. 1986), and in matters concerning the suppression of evidence, the trial judge sits as both trier of fact and of law. The credibility of the witnesses and the weight of the evidence presented are matters within the province of the trial judge, whose determinations of factual questions must be accepted by the appellate court if the record supports that finding. Cameron v. State, 112 So.2d 864, 869 (Fla. 1st DCA 1959); State v. Garcia, 431 So.2d 651, 651 (Fla. 3d DCA 1983); State v. Battleman, 374 So.2d 636, 637 (Fla. 3d DCA 1979).
In the instant case, the county judge determined in ruling on the motion in limine that the bypass of the T-cell constituted a substantial modification of the device so as to require recertification or reapproval by HRS. This is a factual question that should not be disturbed on appeal, because it is based upon the trial judge's resolution of conflicting evidence and is supported by competent, substantial evidence in the record. For instance, it was undisputed that HRS had only tested the I-3000 Rev. B1 when the T-cell was activated. Although the device always had the ability to override the T-cell, Dr. Jenson, the defendants' expert in the fields of analytical chemistry, toxicology, as well as of intoximeters, testified that there had been no studies done on the effect of bypassing the T-cell, and that without the T-cell, the I-3000 *153 Rev. B1 was scientifically unreliable.[6] While Dr. Jenson admitted that the detection of endogenous acetone (that produced internally by humans) was not a significant factor in breathalyzer testing, he explained that little testing had been done in the area of exogenous acetone (which is absorbed from an external source, for example, through inhalation of solvents such as paint thinners), and he gave illustrations of significant discrepancies in blood alcohol content readings obtained by intoximeters with deactivated T-cells when the persons tested had no alcohol in their systems but had been exposed to exogenous acetone.
Moreover, the county judge's order in limine is supported by substantial case law. In State v. Flood, 523 So.2d 1180 (Fla. 5th DCA 1988), the Fifth District affirmed an order suppressing breath test results taken from an intoximeter. As in the case at bar, the police department, after experiencing numerous problems with the burning out of T-cells, had drilled a hole in the T-cell housing and inserted a valve. Although the T-cell was still operable, the defense expert testified that the instrument had been changed to such an extent that recertification was required. Based on the record before it, the Fifth District agreed that there had been so substantial a change that the modified machine required full recertification by HRS in order to be an approved machine. The court then concluded that because the breath test was not administered by an approved instrument, the test results were inadmissible and affirmed the suppression order. See also Commonwealth v. McGinnis, 511 Pa. 520, 515 A.2d 847 (1986). Compare State v. Crea, 119 Idaho 352, 806 P.2d 445 (1991); State v. Wilson, 116 Idaho 771, 780 P.2d 93 (1989); Lattarulo v. State, 261 Ga. 124, 401 S.E.2d 516 cert. denied, ___ U.S. ___, 112 S.Ct. 86, 116 L.Ed.2d 59 (1991).
Based upon the forgoing, we conclude that the trial court did not abuse its discretion by granting the motion in limine and therefore answer the first certified question in the affirmative.
Turning to the second issue, we initially agree with the state that the admissibility of blood alcohol evidence is not determined solely by reference to the implied consent statutes, and that such evidence continues to be subject to traditional rules regarding admissibility of evidence. Miller v. State, 597 So.2d 767 (Fla. 1991). See also State v. Strong, 504 So.2d 758 (Fla. 1987); State v. Walther, 519 So.2d 731 (Fla. 1st DCA 1988); State v. Quartararo, 522 So.2d 42 (Fla. 2d DCA), review denied, 531 So.2d 1354 (Fla. 1988). However, the blood alcohol content evidence in the case at bar was obtained solely upon the defendants' implied consent. It is well established that the implied consent statutes and the approved chemical testing methods are interrelated. State v. Bender, 382 So.2d 697, 699 (Fla. 1980). Consequently, if the only support for obtaining blood alcohol content evidence is based, as here, upon consent, the record must display that the consent was voluntarily given. For example, in State v. Burnett, 536 So.2d 375 (Fla. 2d DCA 1988), it was held that the defendant was erroneously informed that his license would be suspended under the implied consent statute if he refused to consent to a blood draw. Because, under the circumstances there presented, the defendant was not required to submit to a blood draw, the court found that the implied consent statute did not apply and thus that the defendant's consent had not been voluntarily given in that it was based upon misinformation.
Similarly, because the intoximeter here was not an "approved" instrument, as required by section 316.1932(1)(a), the tests given to the defendants could not be considered "approved" tests. As their consent was based on misinformation, namely, that their licenses would be suspended for failure to submit to an unapproved test,[7] the *154 defendants' consent cannot be deemed voluntary pursuant to the Burnett rule.
We therefore conclude that the trial court did not abuse its discretion in granting the motion to suppress, and answer as well the second certified question in the affirmative.
AFFIRMED.
SMITH and ALLEN, JJ., concur.
NOTES
[1] The T-cell is a component in the intoximeter which detects and measures acetone and other hydrocarbons. When the T-cell is activated, it subtracts acetone and other interfering hydrocarbon readings from the alcohol reading, with the result being a pure alcohol reading. When the T-cell is deactivated, the intoximeter can no longer distinguish between alcohol and acetone and interfering hydrocarbons and instead measures acetone and hydrocarbons as alcohol.
[2] Appellee Martin was charged with violations of Sections 316.074 and 316.1934, Florida Statutes (1989).
[3] Section 316.1932 provides in pertinent part:

(1)(a) Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state shall, by so operating such vehicle, be deemed to have given his consent to submit to an approved chemical test or physical test including but not limited to an infrared light test of his breath for the purpose of determining the alcoholic content of his blood, and to a urine test for the purpose of detecting the presence of chemical ... or controlled substances, if he is lawfully arrested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages, chemical substances, or controlled substances... . Such person shall be told that his failure to submit to any lawful test of his breath or urine, or both, will result in the suspension of his privilege to operate a motor vehicle for a period of 1 year for a first refusal, or for a period of 18 months if the driving privilege of such person has been previously suspended as a result of a refusal to submit to such a test or tests. The refusal to submit to a chemical or physical breath test or to a urine test upon the request of a law enforcement officer as provided in this section shall be admissible into evidence in any criminal proceeding.
(b) An analysis of a person's breath, in order to be considered valid under this section, must have been performed substantially according to methods approved by the Department of Health and Rehabilitative Services. For this purpose, the department is authorized to approve satisfactory techniques or methods. Any insubstantial differences between approved techniques and actual testing procedures in any individual case shall not render the test or test results invalid.
(Emphasis added.)
[4] The Department of Health and Rehabilitative Services (HRS) is authorized under section 316.1932(1)(b), supra note 3, to develop and approve satisfactory techniques and methods for performing chemical tests. Pursuant to that mandate, HRS has promulgated rules and regulations concerning approved techniques and methods for such testing under Chapter 10D-42 of the Florida Administrative Code. Rule 10D-42.022 relating to approval and certification of chemical breath testing methods, lists the tests HRS must perform on the device or instrument used and the accuracy of the results necessary for approval. Rule 10D-42.034(1)(b) provides that the I-3000 Rev. B1 is an approved alcohol breath test instrument.
[5] Because we are restricted to this review standard, we reject the state's argument that HRS's non-rule policy approving the intoximeter with the bypassed T-cell was a reasonable interpretation of the statutes by the agency, and that we should therefore accord the same broad deference to such interpretation as is ordinarily given in administrative appeals.
[6] Dr. Jenson was also the defendant's expert in State v. Flood, 523 So.2d 1180 (Fla. 5th DCA 1988), discussed infra.
[7] We reject appellant's argument that section 316.1932 permits license suspension for failure to take any lawful test. The statute clearly states that the operator of a motor vehicle is deemed to give his or her consent to submit to an approved test. When the statute discusses suspension based on refusal to take any lawful test, we consider this provision must be read in pari materia with the consent portion of the statute requiring submission to an approved test.