653 So.2d 422 (1995)
The STATE of Florida, Appellant,
v.
Sean SLANEY, Appellee.
No. 93-1176.
District Court of Appeal of Florida, Third District.
March 22, 1995.
Rehearing Denied May 10, 1995.
*423 Robert A. Butterworth, Atty. Gen., and Mark Rosenblatt, Asst. Atty. Gen., for appellant.
Colodny, Fass & Talenfeld and Stuart B. Yanofsky, Fort Lauderdale, for appellee.
Before HUBBART and COPE and GODERICH, JJ.
HUBBART, Judge.
This is an appeal by the state from an order of the Dade County Court granting the defendant Sean Slaney's motion to suppress the results of a blood alcohol test conducted on a blood sample involuntarily taken from the defendant by medical personnel at the request of the police; this order was entered in a criminal traffic case in which the defendant was charged with driving a motor vehicle while under the influence of an alcoholic beverage [hereinafter DUI]. In the order under review, the Dade County Court certifies that this case raises a question of great public importance, which question we rephrase as follows:
"If [as here] a police officer [based on probable cause] arrests a [conscious] defendant for driving [a motor vehicle] under the influence [of an alcoholic beverage after a traffic accident in which no person has been killed or seriously injured and *424 where the administration of a breath or urine test is not otherwise impractical or impossible], may [the officer] require the defendant to submit to [an involuntary] blood withdrawal performed by medically qualified personnel ...?"
We reject the defendant's arguments to the contrary and conclude that this court has jurisdiction to entertain this appeal as one taken from a non-final order of the county court certified to be of great public importance. Art. V, § 4(b)(1), Fla. Const.; Fla. R.App.P. 9.030(b)(4), 9.160. Moreover, for the reasons which follow, we answer the certified question in the negative upon a holding that the withdrawal of such a blood sample (1) constitutes a violation of Florida's implied consent law under Sections 316.1932(1)(c), 316.1933(1), Florida Statutes (1991), and (2) cannot otherwise be justified on the basis of the defendant's voluntary consent; accordingly, we affirm the order under review suppressing as evidence the results of the subject blood test.

I
The facts of this case, as found by the trial court in the order under review and supplemented by other undisputed evidence, are as follows:
"The defendant [Sean W. Slaney] was involved in a one-car [traffic] accident [in the late evening hours of May 12, 1992 in Dade County, Florida, when he lost control of the car he was driving, left the public street and ran into a tree]. Police and [f]ire [r]escue responded to the scene. The defendant, who was [conscious and] bleeding from his forehead was treated by [f]ire [r]escue and the bleeding was stopped. [After placing the defendant under arrest for driving a motor vehicle while under the influence of an intoxicating beverage[1],] [t]he first [police] officer on the scene requested that the [p]aramedic withdraw a blood sample from the defendant[;] however, the [p]aramedic was unable to do so because he lacked the proper equipment. The first officer believed the defendant was not seriously injured.
The second [police] officer that arrived on the scene testified that he read to the defendant the [i]mplied [c]onsent [l]aw [from a form;] however, the second officer testified that wherever the words breath or urine appeared [on the form] he substituted the word `blood' [i.e., that the defendant would lose his driver's license if he refused to consent to a blood draw]. The second officer further testified that the defendant agreed to give blood only after [the officer] read to the defendant the modified [i]mplied [c]onsent [l]aw. The second officer took the defendant to the hospital where a qualified medical person at [the officer's] request withdrew a blood sample from the defendant."
The defendant was charged with driving a motor vehicle while under the influence of an alcoholic beverage [§ 316.193, Fla. Stat. (1991)] before the Dade County Court; he entered a plea of not guilty and filed a pretrial motion to suppress the results of the blood alcohol test performed on the blood sample taken from him. The motion came on for an evidentiary hearing at which the above-stated facts were adduced.
The defendant contended below that the police were only authorized to demand a blood sample from a motorist under Sections 316.1932(1)(c), 316.1933(1), Florida Statutes (1991), and that neither of these statutes were applicable to this case; accordingly, he argued that the blood sample was illegally obtained from the defendant and the results of the subsequent blood test performed on this sample should be suppressed at defendant's criminal traffic trial. The state did not deny that the above statutes were inapplicable in this case, but argued that the blood tests were nonetheless admissible in evidence under the authority of Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) and Robertson v. State, 604 So.2d 783 (Fla. 1992) because (1) the defendant was lawfully arrested for DUI, (2) the blood was withdrawn from the defendant incident to this lawful arrest by medical personnel pursuant to medically approved procedures, and (3) the core policies of the implied consent statutes were observed in this case.
*425 The trial court agreed with the defendant and suppressed the blood test results based on its conclusion that "blood may be withdrawn for a DUI prosecution only within the parameters of [§§] 316.1932(1)(c) and 316.1933(1)" which, without dispute, were not complied with by the police in this case. The state appeals.

II
The law is well settled that it is not an unreasonable search within the meaning of the Fourth Amendment to the United States Constitution, as made enforceable against the states under the Due Process clause of the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), for police to obtain a warrantless involuntary blood sample from a defendant who is under arrest for DUI provided (1) there is probable cause to arrest the defendant for that offense, and (2) the blood is extracted in a reasonable manner by medical personnel pursuant to medically approved procedures. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). It is equally well settled, however, that the states are privileged under their state law to adopt higher, but not lower, standards for police conduct than those required by the Fourth Amendment. Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967) (state constitutional provision on search and seizure); Sibron v. New York, 392 U.S. 40, 61, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968) (state statute). In Florida, these higher standards may not, as a matter of state law, be imposed under the state constitutional guarantee against unreasonable searches and seizures, Art. I, § 12, Fla. Const. (1982 amendments); Bernie v. State, 524 So.2d 988 (Fla. 1988), but may be imposed by other provisions of Florida law, including a state statute. Compare Shaktman v. State, 553 So.2d 148 (Fla. 1989) (pen registers regulated under Article I, section 23 of the Florida Constitution) with Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (pen registers; Fourth Amendment).
Indeed, it is the established law of this state that Florida's implied consent statutes [§§ 316.1932, 316.1933, 316.1934, Fla. Stat. (1991)] impose, in certain respects, higher standards on police conduct in obtaining breath, urine, and blood samples from a defendant in a DUI case than those required by the Fourth Amendment. The Florida Supreme Court in Sambrine v. State, 386 So.2d 546, 548 (Fla. 1980), has so stated:
"What is at issue here ... is ... the right of the state of Florida to extend to its citizenry protections against unreasonable searches and seizures greater than those afforded by the federal constitution [through the Fourth Amendment]. This it has done through the enactment of section 322.261, Florida Statues (1975) [now sections 316.1932, 316.1933, Florida Statutes (1991)]."
As further stated by the Fifth District Court of Appeal in State v. McInnis, 581 So.2d 1370, 1374 (Fla. 5th DCA), cause dismissed, 584 So.2d 998 (Fla. 1991),
"One public policy reason for enacting such a statutory scheme [Florida's implied consent statutes] is the legislature's decision to extend to some motorists driving in Florida greater protection and rights of privacy than are provided by the state or federal constitutions."
In particular, Florida's implied consent statutes (1) limit the power of the police to require a person who is lawfully arrested for DUI to give samples of his/her breath, urine, or blood without the person's consent, and (2) prescribe the exact methods by which such samples may be taken and tested. These limitations and prescribed procedures represent higher standards for police conduct in obtaining samples of this nature from a DUI defendant than those required by the Fourth Amendment and are entirely permissible as a matter of state law. Cooper; Sibron.

A
First, as to the limitation on police power to require a person to give breath, urine, and blood samples after a DUI arrest, the implied consent statutes impose certain well-defined restrictions which otherwise exceed Fourth Amendment standards.

*426 1
Section 316.1932(1)(a), Florida Statutes (1991), provides that any person who accepts the privilege of driving a motor vehicle in this state and who is lawfully under arrest for DUI is "deemed to have given his consent" to the withdrawal of breath and urine samples  but not blood samples  from his or her person and to the scientific testing of such samples. The statute, however, does not provide for the forcible taking of breath and urine samples  which arguably Schmerber authorizes  as it gives the arrested person the option to refuse to give such samples, although certain consequences are imposed for the refusal. Accordingly, the person must be advised that the failure to submit to a lawful test of his/her breath or urine "will result in the suspension of his [or her] privilege to operate a motor vehicle," § 316.1932(1)(a), Fla. Stat. (1991), for a certain period of time, which suspension becomes effective immediately upon such refusal, see § 322.2615, Fla. Stat. (1991); further, the refusal to take the breath or urine test "shall be admissible into evidence in any criminal proceeding." § 316.1932(1)(a), Fla. Stat. (1991). As the Florida Supreme Court has stated, "[u]nder this provision, a conscious person is given the right to refuse to take a chemical [breath or urine] test if he [or she] is willing to suffer a ... suspension of his [or her] driving privilege," and "[a]ny careful reading of section [316.1932(1)] leads to the inescapable conclusion that a person is given the right to refuse [breath or urine] testing." Sambrine v. State, 386 So.2d 546, 548 (Fla. 1980). On the other hand, if the arrested person agrees to a breath or urine test after being properly advised as provided above, a sample of the person's breath or urine may be withdrawn for chemical testing purposes.
Notwithstanding the above implied consent statutes, however, it is clear that a person who is arrested for DUI may volunteer or otherwise freely consent to give a sample of his/her breath or urine for chemical testing purposes. § 316.1932(1)(c), Fla. Stat. (1991). A sample of such a person's breath or urine may properly be withdrawn under these circumstances as well, quite apart from the implied consent statutes. See Robertson v. State, 604 So.2d 783, 790 (Fla. 1992) (following State v. Wallin, 195 N.W.2d 95, 98 (Iowa 1972)); compare Chu v. State, 521 So.2d 330 (Fla. 4th DCA 1988).

2
Sections 316.1932(1)(c) and 316.1933(1), Florida Statutes (1991) carve out two exceptions to the above statutory scheme under which a blood sample may be taken from a person lawfully arrested for DUI. An involuntary blood withdrawal arguably represents a greater intrusion into an arrestee's personal privacy than breath and urine withdrawals and, consequently, is not permitted if these two exceptions are inapplicable.
Section 316.1932(1)(c) provides that a person who is lawfully arrested for DUI is "deemed to have consented" to the withdrawal of a blood sample "if such person appears for treatment at a hospital, clinic, or other medical facility and the administration of a breath or urine test is impractical or impossible." Also, if the person is "incapable of refusal by reason of unconsciousness or other mental or physical condition," a blood withdrawal is authorized and the person need not be advised that the refusal to consent to a blood test will result in the loss of the person's driving privileges. If the person is "capable of refusal," however, the statute does not provide for the forcible taking of a blood sample  which clearly Schmerber authorizes  but, instead, gives the person the option to refuse the blood withdrawal, although certain consequences are imposed for the refusal. These are the same consequences provided for refusing to give a breath or urine sample for testing, namely, (a) the suspension of the person's driver's license for a certain period of time, and (b) the admission into evidence of such refusal in any criminal proceeding. Moreover, the person must be advised that the failure to submit to a blood withdrawal will result in the suspension of the person's driving privileges  the same advisement which must be given prior to obtaining a breath or urine withdrawal.
Section 316.1933(1) provides that a law enforcement officer is authorized to demand a *427 blood withdrawal from any person who is lawfully arrested for DUI if there is probable cause to believe that the person "has caused the death or serious bodily injury of a human being." The arrested person has no right to refuse a blood withdrawal in such a serious case, and, indeed, a law enforcement officer "may use reasonable force if necessary to require such person to submit to the administration of a blood test."
The Florida Supreme Court in State v. Perez, 531 So.2d 961 (Fla. 1988), has interpreted the above statutes, as follows:
"Thus, the general scheme for determining if a motorist is impaired is: (1) before an arrest, the suspect may consent to or demand a breath test; and (2) after an arrest, the person is deemed to have implicitly consented to a breath test and a urine test.
The first exception to this general scheme is given in section 316.1932(1)(c), whereby a `person whose consent is implied' i.e., is lawfully arrested, is taken for treatment to a medical facility and a breath or urine test is impossible or impractical to perform. Only then may a blood test be requested, subject to the person's refusal. The subsection further provides penalties for such a refusal but does not authorize the officer to proceed with the test regardless of the refusal.
The other exception to the general scheme of breath and urine testing is found in section 316.1933(1), the statute in question. Again, this statute expressly authorizes blood tests where an officer has probable cause to believe an impaired driver has caused death or serious injury to a human being. In short, these sections together narrowly define the circumstances in which testing for impairment is allowed absent express consent, and they carve out two narrow exceptions to the scheme which allow blood tests."
Id. at 963-64 (footnote omitted).
Similarly, the Fourth District Court of Appeal in Chu v. State, 521 So.2d 330 (Fla. 4th DCA 1988) has interpreted the above statutes as follows:
"We think it is clear that the legislature intended and provided for the use of breath and urine tests, except under the circumstances described in sections 316.1932(1)(c) and 316.1933(1) and that the legislature did not intend to authorize a law enforcement officer to request a blood test when the conditions described in these statutes do not exist. However, we also recognize that circumstances may occur where it is more convenient for a person to submit to a blood test rather than a breath or urine test. Under such circumstances we see no reason to exclude a voluntary blood test provided the person has been fully informed that the implied consent law requires submission only to a breath or urine test and that the blood test is offered as an alternative. The key to admissibility is that the consent must be knowingly and voluntarily made and not as the result of the acquiescence to lawful authority."
Id. at 332.
Notwithstanding the above implied consent statutes, however, it is clear that a person arrested for DUI may, as stated in Chu, volunteer or otherwise freely consent to give a sample of his/her blood for chemical testing purposes. A sample of such a person's blood may properly be withdrawn under these circumstances as well, quite apart from the implied consent statutes. Chu; see Robertson v. State, 604 So.2d 783, 790 (following State v. Wallin, 195 N.W.2d 95, 98 (Iowa 1972)).

3
It is well settled that the results of a scientific test performed on a blood sample [as well as, presumably, a breath and urine sample] which is involuntarily taken from a defendant in violation of the above provisions of the implied consent statutes  limiting, as they do, the power of the police to require a person arrested for DUI to give such a sample  is inadmissible in evidence at the defendant's trial, even though the sample may have otherwise been seized in compliance with Fourth Amendment standards. Indeed, the Florida Supreme Court and the District Courts of Appeal, in a long line of cases, have routinely excluded from evidence the results of a scientific test performed on a blood *428 sample involuntarily taken from a defendant when, under our implied consent statutes, the police were not authorized to require the defendant to give such a sample.[2] On the other hand, as an exception to this rule, it is clear that the results of a scientific test performed on a breath, urine, or blood sample volunteered or otherwise voluntarily consented to by a DUI arrestee, unlike this case, are admissible in evidence quite apart from the implied consent statutes. Chu v. State, 521 So.2d 330 (Fla. 4th DCA 1988); see Robertson v. State, 604 So.2d 783, 796 (Fla. 1992) (following State v. Wallin, 195 N.W.2d 95, 98 (Iowa 1972)).

B
Second, the implied consent statutes establish certain prescribed methods by which breath, urine, or blood samples may be scientifically withdrawn from a DUI arrestee and later scientifically tested  where the police are otherwise authorized under the implied consent statutes to request or order the withdrawal of such sample in the first instance as discussed above. These detailed procedures are generally not required by the Fourth Amendment and, for this most part, exceed Fourth Amendment standards.
Section 316.1933(2)(a), Florida Statutes (1991) authorizes "[o]nly a physician, certified paramedic, registered nurse, other personnel authorized by a hospital to draw blood, or duly licensed clinical laboratory director, supervisor, technologist, or technician"[3] to withdraw blood from a DUI arrestee at the request of a law enforcement officer. Section 316.1933(2)(b), Florida Statutes (1991) further provides that a chemical analysis of such a blood sample "must have been performed substantially in accordance with methods approved by the Department of Health and Rehabilitative Services[4] and by an individual possessing a valid permit issued by the department for this purpose," but Section 316.1934(3), Florida Statutes (1991) provides that "[a]ny insubstantial differences between approved techniques and actual testing procedures in any individual case, shall not render the test or test results invalid."[5]
Section 316.1932(1)(a), Florida Statutes (1991) also provides that a "urine test shall be ... administered at a detention facility or any other facility, mobile or otherwise, which is equipped to administer such tests at the request of a law enforcement officer... ." Section 316.1932(1)(b), Florida Statutes (1991) also provides that an analysis of a breath sample "must have been performed substantially according to methods approved *429 by the Department of Health and Rehabilitative Services,"[6] but "[a]ny insubstantial differences between approved techniques and actual testing procedures in any individual case does not render the test or test results invalid." § 316.1932(1)(b), Fla. Stat. (1991).
In Robertson v. State, 604 So.2d 783 (Fla. 1992), the Florida Supreme Court fashioned a limited exclusionary rule for violations of these scientific withdrawal and testing procedures of the implied consent statutes. Referring to State v. Bender, 382 So.2d 697 (Fla. 1980), wherein the Court upheld the constitutionality of certain of these procedures [i.e., administrative rules promulgated under the implied consent statutes], the Court in Robertson stated:
"In Bender, the Court conducted a thorough analysis of Florida's `implied consent law' and its relation to the earlier common law and other evidentiary principles governing the admissibility of expert testimony in a DUI-related prosecution. First, the Bender Court expressly recognized that the implied consent law includes an exclusionary rule prohibiting the use of blood-test results taken contrary to its core policies.[5]
[5]. As is noted more fully below, this exclusionary rule does not prohibit the use of all evidence obtained contrary to the implied consent law, but only such evidence obtained in a manner that is contrary to the core policies of that statute: ensuring scientific reliability of the tests, and protecting the health of test subjects. To this extent, the present opinion clarifies the holding of Bender."
604 So.2d at 789 (footnote 4 omitted).
The Court then noted that application of this limited exclusionary rule can result in the exclusion of breath, urine, or blood sample testing conducted in violation of the above-stated core policies:
"Several cases from the district courts of appeal can be understood as resting on the same policies stated in Bender. For example, in some cases in the district courts have suppressed evidence from blood samples drawn by persons who completely lacked authorization. E.g., Albritton v. State, 561 So.2d 19 (Fla. 5th DCA 1990); State v. Roose, 450 So.2d 861 (Fla. 3d DCA), review denied, 451 So.2d 850 (Fla. 1984). Similarly, such evidence has been suppressed where testing equipment was not properly maintained or stored. Donaldson v. State, 561 So.2d 648 (Fla. 4th DCA 1990), approved, 579 So.2d 728 (Fla. 1991); State v. Wills, 359 So.2d 566 (Fla. 2d DCA 1978). Clearly, the use of unauthorized persons to draw blood and the use of improperly maintained equipment could threaten the health of test subjects. Thus, on this basis, the exclusionary rule of the implied consent law requires that such evidence be suppressed."
604 So.2d at 790.
Finally, the Court recognized two exceptions to this limited exclusionary rule:
"[1] In much the same vein, the courts generally have recognized exceptions to the implied consent law's exclusionary rule provided those exceptions are consistent with the policies underlying the law. For example, the Iowa court concluded in Wallin that compliance with the statute is not necessary (a) where consent to the test existed on some independent basis, or (b) to the extent that the defendant waived the rights provided by the statute. Wallin, 195 N.W.2d at 98. As to the first of these categories, it is clear that a person only needs the protection of the implied consent law if the testing provisions of the law actually are being invoked by the state. If the defendant has consented to the test, or consent is implied on some basis independent of the DUI laws, then the blood test falls wholly outside the scope of the implied consent law.[7] Likewise, a defendant has complete freedom to voluntarily waive the protections created by the statute."
[7]. In other words, the implied consent statute and its exclusionary rule apply only when blood is being taken from a person based on probable cause that the person has caused death or serious bodily injury as a result of a DUI offense specified in the statutes."
604 So.2d at 790.
"[2] Based on the policies elaborated above, we believe that one further exception to the exclusionary rule exists. We *430 hold that the implied consent law does not absolutely forbid the admission into evidence of blood-alcohol test results and related testimony produced by an unlicensed expert, subject to two important provisos. First, the blood must have been drawn by a person authorized to do so by the implied consent statute. See [State v.] Gillman [390 So.2d 62 (Fla. 1980)]; § 316.1933(2)(a), Fla. Stat. (1987). And second, the evidence so produced cannot be admitted unless the state establishes the three-prong predicate described in Bender."
604 So.2d at 791 (footnote omitted).
"Bender noted that, prior to the adoption of the implied consent law, scientific test results for intoxication were admissible
`if a proper predicate established that (1) the test was reliable, (2) the test was performed by a qualified operator with the proper equipment and (3) expert testimony was presented concerning the meaning of the test.'"
604 So.2d at 789.
Contrary to the state's argument, it is important to understand that the above limited exclusionary rule and its exceptions refer solely to violations of the implied consent statutes concerning the scientific methods by which breath, urine, and blood samples may be withdrawn and later tested. This rule and its exceptions presuppose that the police had the authority under the implied consent statutes to request or order a DUI arrestee to give the underlying breath, urine, or blood sample in the first instance, else these scientific withdrawal and testing provisions become totally inapplicable. Robertson, 604 So.2d at 790 n. 7. Where the police lack such authority in the first instance under the implied consent statutes, the ensuing involuntary breath, urine, or blood sample obtained, as well as the results of any scientific tests performed on the sample, are inadmissible in evidence at the DUI arrestee's trial under the exclusionary rule followed by the Florida Supreme Court and District Courts of Appeal in the Sambrine-Perez line of cases, discussed previously.[7] Indeed, the Robertson Court implicitly assumes the viability of this well-established exclusionary rule.

III
Turning to the instant case, it is undisputed that the police had no authority under the implied consent statutes to request a blood sample from the defendant or to advise the defendant that he would lose his driver's license if he refused to consent to a blood withdrawal. Although it is assumed for purposes of this appeal that the police had probable cause to arrest the defendant for driving a motor vehicle while under the influence of an alcoholic beverage, there was utterly no showing below that "a breath or urine test [was] impractical or impossible," and so there was no basis under Section 316.1932(1)(c), Florida Statutes (1991), for the police to require the defendant to give a blood sample nor to advise the defendant that he would lose his driver's license if he failed to consent to such a blood withdrawal. Nor was there any showing below that the defendant was incapable of a refusal to consent to a blood withdrawal "by reason of unconsciousness or other mental or physical condition" which would have authorized such a blood withdrawal under Section 316.1932(1)(c), Florida Statutes (1991); to the contrary, the record shows that the defendant was fully conscious and alert at the time the blood sample was taken from him at the hospital. Moreover, it has been held that where, as here, a DUI arrestee consents to a blood withdrawal after being improperly advised that he will lose his driver's license if he fails to give such consent, the ensuing consent is involuntary in nature because it was induced by a misrepresentation. State v. Burnett, 536 So.2d 375 (Fla. 2d DCA 1988); see also State v. Polak, 598 So.2d 150 (Fla. 1st DCA 1992) (breath sample).
Beyond that, there was utterly no basis for an involuntary blood withdrawal from the defendant under Section 316.1933(1), Florida Statutes (1991). Although there was apparent probable cause to arrest the defendant for DUI, there was utterly no showing below that the defendant had "caused the death or serious bodily injury of a human being," as *431 required by that statute in order to take an involuntary blood sample from the defendant. To the contrary, the record shows that the defendant was involved in a one-car traffic accident in which neither he nor any third party was seriously injured in any way.
Because the blood sample taken from the defendant in this case was entirely unauthorized under Sections 316.1932(1)(c), 316.1933(1), Florida Statutes (1991), and was otherwise involuntarily given, it is plain that this blood sample and the results of the scientific test performed on this sample were inadmissible in evidence at the defendant's DUI trial below under the Sambrine-Perez line of cases. The state makes two arguments to avoid this inevitable result.
First, it is urged that the involuntary blood withdrawal obtained from the defendant complied with Fourth Amendment standards under Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) because (1) there was probable cause to arrest the defendant for DUI, and (2) the blood was withdrawn from the defendant in a reasonable manner pursuant to medically approved procedures. This argument, however, overlooks the fact that Florida is entitled, as a matter of state law, to impose higher standards on its police officers when obtaining an involuntary blood withdrawal from a person lawfully arrested for DUI than those required by the Fourth Amendment. Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967). Florida has done precisely that by enacting Sections 316.1932(1)(c), 316.1933(1), Florida Statutes (1991), which, without dispute, the police violated in this case. Accordingly, the blood sample and the results of the scientific test performed were inadmissible in evidence as a matter of state law.
Second, the state argues that the blood sample was scientifically withdrawn from the defendant and subsequently tested in full compliance with the "core policies" of the implied consent statutes and therefore  notwithstanding the violation of Sections 316.1932(1)(c), 316.1933(1)  the blood test results were admissible under the exclusionary rule announced in Robertson v. State, 604 So.2d 783, 789 (Fla. 1992). As previously explained, however, the Robertson exclusionary rule and its exceptions presuppose that the police were authorized under the implied consent statutes to request or order a blood withdrawal from the DUI arrestee in the first instance. Because the police were not authorized to request or order the blood withdrawal from the defendant in this case, the blood sample and the results of the scientific test performed were inadmissible in evidence.
For the above-stated reasons, the county court order under review suppressing the results of a blood test performed on a blood sample involuntarily drawn from the defendant at the request of the police in violation of Sections 316.1932(1)(c), 316.1933(1), Florida Statutes (1991), is, in all respects,
Affirmed.
NOTES
[1] It is assumed for purposes of this appeal that this arrest was based on probable cause.
[2] State v. Perez, 531 So.2d 961 (Fla. 1988) (blood sample taken from a lawfully arrested DUI defendant without his consent after being involved in accident in which only he was injured held unauthorized under then-existing Section 316.1933(1), and thus results of scientific test performed on such sample were inadmissible in evidence); Sambrine v. State, 386 So.2d 546 (Fla. 1980) (blood sample taken from a lawfully arrested DUI defendant after he refused a breath and blood test unauthorized under the implied consent statutes and thus results of scientific test performed on such sample were inadmissible in evidence); State v. Burnett, 536 So.2d 375 (Fla. 2d DCA 1988) (blood sample taken from a defendant who was lawfully arrested for DUI not involving a traffic accident after he was injured in the county jail following his arrest held unauthorized by Sections 316.1932(1)(c), 316.1933(1), and thus results of scientific test performed on such sample were inadmissible in evidence); State v. Prues, 478 So.2d 1196 (Fla. 4th DCA 1985) (blood sample taken from a defendant arrested for DUI involved in one-car traffic accident in which only the defendant was seriously injured held unauthorized under then-existing Section 316.1933(1) and thus results of scientific test performed on such sample were inadmissible in evidence); McDonald v. State, 364 So.2d 1241 (Fla. 2d DCA 1978) (blood sample taken from defendant arrested for DUI where defendant objected to the taking of such sample held unauthorized under predecessor implied consent statutes and thus results of scientific test performed on such sample were inadmissible in evidence); State v. Riggins, 348 So.2d 1209 (Fla. 4th DCA 1977) (same), cert. dismissed, 362 So.2d 1056 (Fla. 1978).
[3] The current version of this statute, § 316.1933(1)(c), Fla. Stat. (1993), includes a "licensed practical nurse" among the acceptable blood-withdrawal personnel.
[4] The current version of the statute, § 316.1933(2)(b), Fla. Stat. (1993), places responsibility for approval of chemical analysis methods on "the Department of Law Enforcement."
[5] The current version of the statute, § 316.1934(3), Fla. Stat. (1993), additionally provides that the test or test results are not rendered invalid by "any insubstantial defects concerning the permit issued by the department... ."
[6] See supra note 4 (The Department of Law Enforcement now has approval responsibility.).
[7] See supra note 2 and accompanying text, at IA3 of this opinion.