438 So.2d 1085 (1983)
STATE of Florida, Petitioner,
v.
Martha Gwen POTTER, Respondent.
No. 83-568.
District Court of Appeal of Florida, Second District.
October 21, 1983.
*1086 Jim Smith, Atty. Gen., Tallahassee, and Frank Lester Adams, III, Tampa, for petitioner.
James W. Kelly, Avon Park, for respondent.
OTT, Chief Judge.
By Petition for Writ of Certiorari, the state asks this court to review the order of the Circuit Court of the Tenth Judicial Circuit affirming the county court's (1) grant of respondent's motion for suppression of evidence stemming from her arrest and (2) granting suppression of evidence of a breathalyzer test. Finding the circuit court affirmance of the first part of the county court's decision to involve a departure from the essential requirements of law, we partially grant the relief requested in the state's petition.
On July 16, 1982, Officer Steven Green of the Avon Park Police Department observed respondent operating her vehicle within the city limits with one of her two taillights apparently nonfunctional. In following and closing on her vehicle he discovered that the taillight was merely dim. However, he also observed respondent's vehicle "weave," crossing the center line three times. Officer Green activated his blue-light and siren, stopping respondent approximately one-half mile beyond the city limits. After the stop, Officer Green's observations of respondent convinced him that respondent was intoxicated. He administered two roadside sobriety tests which re-enforced his conclusion. He, therefore, placed her under arrest for driving while intoxicated. On the same date, she submitted to a breathalyzer test, resulting in a .17 reading.
On September 17, 1982, an information was filed, charging respondent with driving under the influence of alcoholic beverages and unlawful blood alcohol, contrary to section 316.193, Florida Statutes (Supp. 1982). She moved to suppress evidence stemming from the arrest, arguing that Officer Green was acting outside his territorial jurisdiction without legal authority. She also moved to suppress evidence of the breathalyzer test, claiming that the operator administering the test was not properly certified according to Florida law. The county court granted both motions on October 28, 1982. On appeal the circuit court affirmed, concluding that the officer had no authority or jurisdiction to make the initial arrest. Consequently, the circuit court determined that suppression of the breathalyzer test was a moot question  presumably as flowing from an illegal stop or arrest.
Pursuant to section 901.15(5), Florida Statutes (1981), a peace officer is authorized to effect a warrantless arrest when a "violation of chapter 316 has been committed in the presence of the officer. Such arrest may be made immediately or on fresh pursuit." In the instant case, Officer Green's observations of respondent's vehicle within the city limits indicated a violation of section 316.089(1), Florida Statutes (1981), a civil infraction involving failure to maintain a single lane. Since the officer's initial stop of respondent was based on a violation of chapter 316, he was acting within the authority conferred by section 901.15(5). Moreover, because the City of Avon Park has adopted chapter 316 of the Florida Statutes in its municipal ordinances, respondent's apparent violation of section 316.089(1) clothed Officer Green with authority under section 901.25(2), Florida Statutes (1981),[1] to arrest on fresh pursuit *1087 across jurisdictional lines for violation of a city ordinance. See Cheatem v. State, 416 So.2d 35 (Fla. 4th DCA 1982). We believe this is true regardless of whether respondent was ultimately charged with violation of a city ordinance.
The state's second contention is that suppression of the breathalyzer test results was improper. We disagree.
Public concern and protection may, as here, justify the invasion or transgression of our highly regarded right of personal privacy or freedom.[2] The legislature has the right to determine under what circumstances such an invasion is justified, within established constitutional limits. It should go without saying that any specific legislative restrictions or dictates accompanying such invasions must be strictly complied with and narrowly applied.
When the state presents evidence of motor vehicle driver intoxication which includes an approved alcoholic test method, the test results are admissible only upon compliance with the statutory provisions and the administrative rules enacted thereunder. State v. Gillman, 390 So.2d 62, 63 (Fla. 1980); State v. Bender, 382 So.2d 697, 699 (Fla. 1980). Chemical analysis of a person's blood or breath must be performed "by an individual possessing a valid permit issued by the Division of Health for this purpose." § 322.262(3), Fla. Stat. (1981). The burden is upon the state to affirmatively demonstrate that the test was administered by a person possessing the statutory requirements. Gillman v. State, 373 So.2d 935, 937 (Fla. 2d DCA 1978), rev'd on other grounds, State v. Gillman, 390 So.2d 62 (Fla. 1980).
On July 16, 1982, Sebring Police Officer Leonard Hardy administered a breathalyzer test to respondent. At the hearing in county court, Officer Hardy produced a permit card indicating that it was valid from March 20, 1979, to March 19, 1982. He therefore did not possess a valid permit at the time of performing the analysis on July 16, 1982. The state contends this was immaterial and that while he had not been issued a new card he should be considered permitted through 1984. Officer Hardy testified that he submitted to (and presumably completed and passed) refresher courses on August 18, 1981, and September 28, 1982. The former took place before the expiration date on his permit and the latter after it had expired and after the analysis in question. In addition, a letter was introduced from S.O. Roberts, Alcohol Breath Testing Supervisor for the Department of Health and Rehabilitative Services, to petitioner's counsel. This letter stated that Officer Hardy was issued a permit to conduct breathalyzer tests, dated August 18, 1981, through August 17, 1984. This is totally inconsistent with the dates on the officer's permit. The letter also stated that Officer Hardy had "attended a refresher school on August 18, 1981, making his permit valid on July 16, 1982." This may have entitled the officer to a permit under the department's rather ambiguous regulation 10D-42.26,[3] *1088 but cannot obviate the clear mandate of section 322.262(3) to "possess a valid permit" as well as or in addition to having met the department's approved methods  including testing.
Based on our review of the evidence presented at the suppression hearing and review of the administrative rule governing renewal of permits, we cannot fault the trial court's conclusion that the state failed to carry its burden of affirmatively showing that the operator held a valid permit on July 16, 1982. Accordingly, we find the state's second contention to be without merit.
That part of the circuit court's decision affirming the trial court's suppression of evidence stemming from the arrest is QUASHED. That part of the circuit court decision affirming the trial court's suppression of the breathalyzer results is AFFIRMED for the reasons herein expressed.
DANAHY and LEHAN, JJ., concur.
NOTES
[1] Relevant portions of section 901.25(1) and (2) provide:

(1) The term "fresh pursuit" as used in this act shall include fresh pursuit as defined by the common law... . It shall also include the pursuit of a person who has violated a city ordinance or committed a misdemeanor.
(2) Any duly authorized state, county, or municipal arresting officer is authorized to arrest a person outside his jurisdiction when in fresh pursuit.
[2] The statistics on the alarming magnitude of vehicular carnage in general and that by alcohol or drug impaired drivers in particular are too well known to warrant review.
[3] 10D-42.26 Permit  Technician: Renewal, Requalifying. Permit to conduct chemical analysis of breath only, shall be renewed every 3 years or anytime during the 12 months prior to expiration date, upon written application of persons otherwise qualified under the provisions of these regulations, provided the permittee has successfully completed the annual 6 hour course of instruction prescribed by the Department of Education as approved by the Department of Health and Rehabilitative Services, and which course is designed to reevaluate and requalify permittees. The six hour annual course will not be required in the calendar year the technician is permitted, however, failure of a technician to successfully complete the prescribed 6 hour course in other calendar years (January 1 through December 31) will cause the permit to become invalid as of Midnight December 31. Successful completion of the prescribed 6 hour course will validate the permit from date of completion. Technicians allowing their permits to be invalid for more than 2 years will be required to attend the technicians course as prescribed under Section 10D-42.25. Each technician must advise the Department of Health and Rehabilitative Services of any change of employer within 60 days of such change.