584 So.2d 141 (1991)
STATE of Florida, Appellant,
v.
Robert REISNER, Appellee.
No. 90-2355.
District Court of Appeal of Florida, Fifth District.
August 8, 1991.
*142 Robert A. Butterworth, Atty. Gen., Tallahassee, Anthony J. Golden and Paula C. Coffman, Asst. Attys. Gen., Daytona Beach, for appellant.
Stuart I. Hyman, of NeJame & Hyman, P.A., Orlando, for appellee.

ON MOTION FOR REHEARING, REHEARING EN BANC AND CERTIFICATION
W. SHARP, Judge.
Appellee moves for clarification and rehearing. Appellant moves for rehearing, rehearing en banc and certification. We deny appellant's motion for rehearing and rehearing en banc, but we grant appellee's motion for clarification. Accordingly, we withdraw our prior opinion and replace it with the following.
The county court for Orange County certified the following three questions to this court as involving matters of great public importance:[1]
I. IS FLORIDA ADMINISTRATIVE CODE RULE 10D-42.023 VOID FOR VAGUENESS, AND IF SO, DOES THIS PRECLUDE THE STATE'S USE OF BREATH TESTING INSTRUMENTS IN A CRIMINAL TRIAL?
II. DO THE CURRENT METHODS OF HRS' MONTHLY AND YEARLY MAINTENANCE ACCURACY CHECK COMPLY WITH THE REQUIREMENTS OF SECTION 316.1932(1)(f)(1), FLORIDA STATUTES, AND/OR THE FLORIDA ADMINISTRATIVE PROCEDURES ACT, SECTION 120.50, et seq., FLORIDA STATUTES, AND, IF NOT, DOES THIS PRECLUDE THE STATE'S USE OF BREATH TESTING INSTRUMENTS IN A CRIMINAL TRIAL?
III. MAY THE DEFENDANT RAISE THESE ISSUES IN THE CONTEXT OF A CRIMINAL PROSECUTION IN THE COUNTY COURT?
We answer the first question "yes"; the second "no and yes"; and the third "yes."
These issues arose in the context of the state's prosecution of Robert Reisner for D.U.I.[2] Just prior to the commencement of Reisner's jury trial, the court heard argument on Reisner's motion to suppress the *143 results of a breathalyzer test taken shortly after Reisner's arrest. The test results showed readings of .250 and .256; they had been made by using an Intoxilyzer 5000 Series machine. Rule 10D-42.023 requires that such test instruments be checked yearly for "accuracy" and "reproducibility" and rule 10D-42.024 requires a monthly test for "accuracy." The court found that rule 10D-42.024 governing the monthly checks on that machine was constitutionally valid because it incorporated a specified form[3] (the "original form") which further defined what was meant by "accuracy" and "reproducibility." However, the annual check rule incorporated no specified form. The machine involved in this case was checked pursuant to a revised version of that form,[4] (the "revised form") and the court found that this new form had not been promulgated as a rule or rule change by HRS. Accordingly, it treated Reisner's motion as a motion in limine, which it granted. It certified the questions recited above; and we elected to accept jurisdiction.[5]
The record in this case consists entirely of argument by counsel. No expert witnesses were presented to testify as to whether the original form is the same as, or substantially similar to, the revised form. The attorneys stipulated and agreed that the original form had in fact been promulgated as a rule by HRS but that the revised form had not been so promulgated or adopted.
Reisner's attorney argued that the revised form prescribed an acetone accuracy test, which was not included in the original form.[6] In addition, the original form appears to require the temperature equilibrium and carrier gas pressure to be checked, but the revised form does not. Finally, the original form does not provide for any deviation, while the revised form requires standard results to be within plus or minus 0.005 of standard. The state argues the revised form is more stringent than the original form; but that is not apparent from the record.
Initially, the state contends that Reisner should not be allowed to attack the validity of the rules adopted by HRS in this criminal proceeding; but that he should mount an administrative proceeding pursuant to chapter 120 to challenge them. We disagree. As our Florida Supreme Court has said in State v. Bender, 382 So.2d 697 (Fla. 1980), a defendant may attack the reliability of the testing procedures and the standards establishing the zones of intoxication levels in cases involving vehicle driver intoxication where the results of tests taken pursuant to the implied consent law (chapter 322) are sought to be proffered into evidence. Clearly, such a defendant has standing to raise such an issue in his own criminal case. State v. Flood, 523 So.2d 1180 (Fla. 5th DCA 1988). Further, in view of the vital role which the legal presumptions (.10 or .20) play in determining a defendant's guilt in a D.U.I. case, and the clear prejudice which would result if a test were wrongfully put into evidence, resolving the issue of admissibility in a pretrial proceeding appears to be an orderly method of resolving the admissibility vel non of the test,[7] although such a procedure need not necessarily be resolved on the basis of such a scanty record as the one before us in this case.
The implied consent law, with its suspension of license provisions, presumptions of intoxication, and blood alcohol tests (required in some cases and not in others), is a total package of interrelated provisions. Bender at 699. The test results are admissible into evidence in a D.U.I. case only if the state has complied with the statutes and the administrative rules enacted pursuant to the statutes.[8] If a defendant objects to the admission of a test *144 result because the testing procedures required by the rule were not substantially followed,[9] the state must carry the burden of proving that the test was made substantially in conformity with the laws and the rules.[10]
Section 316.1932(1)(f)1. provides that HRS shall write appropriate rules implementing the implied consent law:
The tests determining the weight of alcohol in the defendant's blood shall be administered at the request of a law enforcement officer substantially in accordance with rules and regulations which shall have been adopted by the Department of Health and Rehabilitative Services. Such rules and regulations shall be adopted after public hearing, shall specify precisely the test or tests which are approved by the Department of Health and Rehabilitative Services for reliability of result and facility of administration, and shall provide an approved method of administration which shall be followed in all such tests given under this section. (emphasis supplied)
Pursuant to this statutory authority, HRS promulgated rule 10D-42.023 and rule 10D-42.024, which require that the instruments used for testing blood alcohol levels pursuant to chapter 316 shall be checked both annually and monthly for "accuracy," and yearly for "reproducibility." However, the rules do not further define such terms. The state conceded that rule 10D-42.022(3)(b), which contains a very stringent definition of "accuracy," does not apply to the annual or monthly checks and that the checks made on the machine in this case came nowhere near that rule's requirements.[11]
This concession leaves this court with no alternative but to hold that the rule governing annual checks adopted by HRS is unconstitutionally vague and ambiguous. See State v. Cumming, 365 So.2d 153 (Fla. 1978). However, Reisner and the state both agree that HRS had fleshed out some meaningful context for the monthly check rule by promulgating, as part of the rule, the requirement that monthly tests of this machine be carried out pursuant to the original form.[12] The court found that the adoption of the original form as an official rule made its requirements of accuracy and reproducibility sufficiently specific. We agree, based on the record, since no scientific evidence or expert witness appeared to challenge the sufficiency of the original form.
However, the machine in this case was not tested using the original form. Both sides agreed the revised form was utilized here and that this form had never been promulgated as a formal rule, contrary to the express requirements of section 316.1932(1)(f)1. Since the rule itself is so vague and undefined, and cannot pass constitutional muster without the original form, the real issue here is whether the revised form can save the day.
We reject the state's argument that the revised form is also a "rule." Unpromulgated rules are not acceptable for this purpose. See State Board of Optometry v. Florida Society of Ophthalmology, 538 So.2d 878 (Fla. 1st DCA 1988), rev. denied, 542 So.2d 1333 (Fla. 1989); Department of Transportation v. Blackhawk Quarry Co. of Florida, Inc., 528 So.2d 447 (Fla. 5th DCA), rev. denied, 536 So.2d 243 (Fla. 1988); Balsam v. Department of Health and Rehabilitative Services, 452 So.2d 976 (Fla. 1st DCA 1984); McCarthy v. Department of Insurance and Treasurer, 479 So.2d 135 (Fla. 2d DCA 1985). One intent of the purpose for specifying the method *145 and means for such chemical tests[13] is to ensure that only reliable scientific evidence is used in court proceedings to protect rights of defendants facing the repercussions of statutory presumptions in their criminal trials. Bender. HRS must approve and specify the specific technology and methods for ensuring (among other things) the accuracy of the machines used. Bender at 699; Gargone at 423. It must do so by formally promulgating rules.
The state also argues that the revised form is substantially similar to the original form, proving substantial compliance with the formal rule as for monthly checks promulgated by HRS. See Flood; Ridgeway v. State, 514 So.2d 418 (Fla. 2d DCA 1987). In Ridgeway, the check on the periodic machine was some ten days (at most) overdue. There was no evidence that this was a critical time delay, and the court held that it did not constitute substantial deviation. In Flood, expert testimony was offered to show the machine had been substantially altered from its original certified state. The court upheld the lower court's determination that a substantial modification had occurred without recertification.
Here, the record only shows that a different form, requiring different procedures, was used for monthly checks. The state produced no expert to explain that any deviation in the procedure used by the two forms was insubstantial or unimportant. We cannot conclude it was, based on the state's mere assertion. Since the state had the burden of proof on this issue, we conclude it failed to prove its case. State v. Donaldson, 579 So.2d 728 (Fla. 1991). Further, the rule adopted for annual checks was unconstitutionally vague.
Accordingly, we affirm the county court's ruling excluding admission of the blood alcohol test and we answer the certified questions as indicated above.
AFFIRMED.
COBB and PETERSON, JJ., concur.
NOTES
[1] Fla.R.App.P. 9.030(b)(4)(A).
[2] § 316.193, Fla. Stat. (1989).
[3] Form 1514 (1982).
[4] Form 1514 (rev. 1986).
[5] Fla.R.App.P. 9.030(b)(4)(A) and 9.160; § 924.07(1)(h), Fla. Stat. (1989).
[6] It appears to be questionable, however, whether HRS ever approved a test for acetone accuracy.
[7] See State v. Tanner, 457 So.2d 1172 (La. 1984).
[8] State v. Bender, 382 So.2d 697 (Fla. 1980); Donaldson v. State, 561 So.2d 648 (Fla. 4th DCA 1990), approved, 579 So.2d 728 (Fla. 1991); Gargone v. State, 503 So.2d 421 (Fla. 3d DCA 1987); Gulley v. State, 501 So.2d 1388 (Fla. 4th DCA 1987); Beasley v. Mitel of Delaware, 449 So.2d 365 (Fla. 1st DCA 1984); State v. Potter, 438 So.2d 1085 (Fla. 2d DCA 1983). See also State v. Rowell, 517 So.2d 799 (La. 1988).
[9] State v. Flood, 523 So.2d 1180 (Fla. 5th DCA 1988).
[10] Donaldson v. State, 561 So.2d 648 (Fla. 4th DCA 1990); State v. Potter, 438 So.2d 1085 (Fla. 2d DCA 1983); Gillman v. State, 373 So.2d 935 (Fla. 2d DCA 1979), certified question answered, 390 So.2d 62 (Fla. 1980). See also State v. Tanner, 457 So.2d 1172 (La. 1984).
[11] That term applies to checks on machines which are required prior to their obtaining approval by HRS.
[12] Fla.R.Admin.C. 10d-42.024(11)(d); Form 1514 (1982).
[13] State v. Bender, 382 So.2d 697 (Fla. 1980) (discussing section 322.261, Florida Statutes (1977).