599 So.2d 1339 (1992)
STATE of Florida, Appellant,
v.
Bruce E. BURKE, Appellee.
No. 91-2555.
District Court of Appeal of Florida, First District.
May 13, 1992.
Rehearing Denied June 15, 1992.
*1340 Robert A. Butterworth, Atty. Gen., Charlie McCoy, Asst. Atty. Gen., Tallahassee, for appellant.
Gregory S. Parker of Smith, Smith & Parker, P.A., Perry, for appellee.
WOLF, Judge.
The State of Florida (state) appeals from an order of the county court suppressing the results of a blood alcohol test administered to Bruce E. Burke, appellee. The county court in its order certified the following question to be one of great public importance:
DO RULES 10D-42.028  10D-42.030 (INCLUSIVE) COMPLY WITH THE MANDATE OF FLORIDA STATUTE 316.1932(1)(f)1 REQUIRING THE FLORIDA DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES TO ESTABLISH BY RULE AND REGULATION AN APPROVED METHOD OF ADMINISTRATION TO BE FOLLOWED IN ALL BLOOD TESTS USED TO DETERMINE THE WEIGHT OF ALCOHOL IN THE DEFENDANT'S BLOOD?
This court accepts jurisdiction pursuant to rule 9.160(e)(2), Florida Rules of Appellate Procedure.
The state asserts on appeal (1) that the trial court did not have subject-matter jurisdiction to suppress evidence solely on the basis that an agency rule is invalid, and (2) that the rules adopted by the Department of Health and Rehabilitative Services (HRS) specified a method of administration of blood alcohol tests as required by section 316.1932(1)(f)1., Florida Statutes (1989). We find that the trial court properly asserted jurisdiction in this matter. We also respectfully restate the question certified by the county court and find that the rules adopted by HRS substantially complied with the statutory requirements, and that any minor technical deviation from the statute was not shown to have any effect on the trustworthiness or reliability of the scientific test. We determine, therefore, that the trial court erred in granting the motion to suppress, and reverse.
Appellee, who was arrested for driving with an unlawful blood alcohol level, moved to suppress the results of a blood alcohol test conducted by the Florida Department of Law Enforcement. The motion was based on HRS's failure to adopt rules required by section 316.1932(1)(f)1., Florida Statutes (1989), which states in pertinent part:
The tests determining the weight of alcohol in the defendant's blood or breath shall be administered at the request of the arresting officer substantially in accordance *1341 with rules and regulations which shall have been adopted by the Department of Health and Rehabilitative Services. Such rules and regulations shall be adopted after public hearing, shall specify precisely the test or tests which are approved by the Department of Health and Rehabilitative Services for reliability of result and facility of administration, and shall provide an approved method of administration which shall be followed in all such tests given under this section.
(Emphasis added).
The appellee's specific challenge concerned the lack of rules relating to method of administration. The trial court made the following findings concerning the existing HRS rules:
The Department of Health and Rehabilitative Services has undertaken this statutory authority through the Florida Administrative Code at Rule 10D-42.028 wherein two procedures have been approved for blood alcohol testing, that is 1) alcohol dehydrogenase, and 2) gas chromatography. Rule 10D-42.029 deals specifically with blood samples as to labeling, collecting and storage. Rule 10D-42.030 deals specifically with permits for blood alcohol testing. Rule 10D-42.030 requires the applicant to file an application on forms supplied by the Department which should include among other things [information] relating to personal identification of the applicant. At subsection D, the Rule requires the applicant to file with the application a complete description of procedures used in determining blood alcohol content. The Rule further requires the applicant to satisfactorily analyze quantitate blood alcohol and meet several requirements listed at subsection 2 subparagraphs A through C.
.....
The administrative code at Rule 10D-42.0211, defines methods as `a set of instructions detailing the proper operation of an instrument or the procedure used to analyze for a specific compound.' The defendant asserts that the Department of Health and Rehabilitative Services, has failed to provide by rule or regulation an approved method of administration which should be followed in all such blood alcohol testing procedures.
In reviewing the rules and regulations, it is apparent that the Department, through adoption of Rule 10D-42.030, has left to the individual technician the right to list the procedure used in such testing in the permit application process. Apparently then, the Department of Health and Rehabilitative Services impliedly adopts such procedure by the issuance of the permit to the applicant.
The court found that the department had adopted no rules and regulations for the method of administration of the blood alcohol test. Therefore, the trial court determined that it could not find substantial compliance with either the statute or rules and regulations.
We initially determine that the state's argument concerning the jurisdiction of the court to determine the validity of HRS rules within a criminal proceeding is without merit. State v. Reisner, 584 So.2d 141 (Fla. 5th DCA 1991), rev. denied, 591 So.2d 184 (Fla. 1991). We next turn our attention to the admissibility of the blood tests. The results of scientific tests are admissible if they are demonstrated to be sufficiently reliable. Ramirez v. State, 542 So.2d 352 (Fla. 1989); Copeland v. State, 566 So.2d 856 (Fla. 1st DCA 1990). Reliability may be proven by a showing of general acceptance within the scientific community. Stokes v. State, 548 So.2d 188 (Fla. 1989). Prior to the adoption of section 322.261 and section 322.262, Florida Statutes (1977) (now section 316.1932 and section 316.1933, Florida Statutes (1991)), the state was required to demonstrate reliability of the blood or breathalyzer testing in all cases where it sought to introduce the results of such tests. State v. Bender, 382 So.2d 697 (Fla. 1980). Compliance with the statutory procedure relieved the state of the burden of demonstrating reliability. In cases where the statute has been followed, the fact finder is allowed to presume that the test is reliable. Id. at 699.
*1342 Where a statute prescribes a specific method of conducting a scientific test, failure to follow the statutory prerequisites will generally preclude admission pursuant to the statute. State v. Bender, supra; Evans Packing Co. v. Department of Agriculture, 550 So.2d 112 (Fla. 1st DCA 1989).
Thus, substantial deviations from section 316.1932, Florida Statutes (and its predecessor), which impede the statutory purpose may result in rendering the test inadmissible. State v. Polak, 598 So.2d 150 (Fla. 1st DCA 1992); State v. Roose, 450 So.2d 861 (Fla. 3rd DCA 1984), rev. denied, 451 So.2d 850 (Fla. 1984). In judging admissibility, however, we must look at the purpose of the statute. The purposes for adopting section 322.261 and section 322.262, Florida Statutes (which direct law enforcement to use only approved technique and methods) were "to ensure reliable scientific evidence ... and to protect the health of those persons being tested ..." State v. Bender, supra at 699. Thus, tests which are conducted in a manner which may substantially affect the integrity of the test results (i.e., T-cell removed from machine, State v. Polak, supra), or which may affect the health of the person being tested (i.e., unlicensed person taking blood, Gillman v. State, 373 So.2d 935 (Fla. 2nd DCA 1979), will preclude the state utilizing the statutory presumptions. Minor deviations from the statutory guidelines which do not contravene the statutory purposes, however, will not prohibit the test results from being presented. State v. Donaldson, 579 So.2d 728 (Fla. 1991).[1] Results of breathalyzer tests which are run in substantial compliance with the approved techniques and procedures shall be admissible. See § 316.1932(1)(b)2, Fla. Stat. (1991); Ridgeway v. State, 514 So.2d 418 (Fla. 1st DCA 1987). While the statutory language concerning blood tests is somewhat different from the language concerning breathalyzers, the admissibility of the result of such blood alcohol tests shall also be judged by a determination of whether substantial compliance with the rules and regulations has taken place. Johnson v. Florida Farm Bureau Casualty Ins. Co., 542 So.2d 367 (Fla. 4th DCA 1988).[2]
The apparent purpose of requiring HRS to adopt rules approving the method of administration is to assure accuracy and reliability of the blood tests. HRS has, in fact, adopted two approved methods for blood testing (rule 10D-42.028, Florida Administrative Code) and specific rules concerning blood labeling, collecting, and storing of blood samples (rule 10D-42.029, Florida Administrative Code). In this case, the record indicates that a licensed operator, who had his testing methods approved by the department as part of his licensing application, performed the test. There is no indication that the operator here deviated from the approved method or that the method which was utilized would not provide accurate results. Under these circumstances, we find that there was substantial compliance with the statutory procedure, and the trial court erred in suppressing the evidence of the test results.[3]
We, thus, reverse the order of suppression and remand to the trial court for further proceedings.
BOOTH and KAHN, JJ., concur.
NOTES
[1] It appears that a number of earlier cases which seem to require absolute and strict compliance with the statute are no longer valid. See Campbell v. State, 423 So.2d 488 (Fla. 1st DCA 1982); State v. Roose, 450 So.2d 861 (Fla. 3rd DCA 1984).
[2] See § 316.1932(1)(f).
[3] We would also note that appellant's implied consent to the blood test should not be considered to be revoked where there has not been a substantial deviation from the statute. See State v. Polak, supra.