602 So.2d 1383 (1992)
STATE of Florida, Appellant,
v.
David MEHL, Appellee.
No. 91-186.
District Court of Appeal of Florida, Fifth District.
August 21, 1992.
*1384 Robert A. Butterworth, Atty. Gen., Tallahassee, and James N. Charles, Asst. Atty. Gen., Daytona Beach, for appellant.
Flem K. Whited, III, of Lambert & Whited, Daytona Beach, and Mark S. Troum of Troum & Wallsh, Winter Park, for appellee.
GRIFFIN, Judge.
The state appeals an order entered by the trial court granting the motion of defendant, David Mehl ("defendant"), to suppress the results of a test of the alcohol level in his blood.[1] We reverse.
After an automobile accident in which defendant and the occupants of a second vehicle suffered injuries, defendant was transported to Orlando Regional Medical Center for treatment. At the request of law enforcement officers, an emergency room physician drew a sample of defendant's blood, which was sent to Florida Department of Law Enforcement crime lab ("FDLE") for testing.[2] The test was conducted using a machine known as a gas chromatograph and revealed a blood alcohol level of .10.
Defendant was subsequently charged with three counts of driving under the influence and causing serious bodily injury,[3] one count of failure to appear,[4] one count of reckless driving,[5] and one count of leaving the scene of an accident.[6] Defendant filed a series of pretrial suppression motions, including a motion to suppress/motion in limine in which he sought suppression of his blood alcohol test results, arguing that section 316.1932(1)(f), Florida Statutes, applies to all blood testing conducted in Florida and that the Department of Health and Rehabilitative Services ("HRS") failed to comply with the requirements of this statute by not adopting rules for use, maintenance, calibration, testing, upkeep, or repair of the gas chromatograph. Defendant also contended the absence of specific and detailed testing methods in the rules adopted by HRS violated his constitutional rights of due process[7] and equal protection.[8]
*1385 At the hearing on the motion, the FDLE forensic toxicologist who conducted the test of defendant's blood testified about HRS rules governing the testing of blood for alcohol content. Only two quantitative procedures are authorized: alcohol dehydrogenase and gas chromatography.[9] Rule 10D-42.030, governs the issuance of permits by HRS to qualified technicians to conduct chemical analysis of blood using one of these two procedures. It requires the applicant for a permit to have certain professional qualifications and to submit to HRS a "complete description of procedures" used by the applicant in determining blood alcohol content.[10] To qualify for a permit utilizing this specific set of procedures the applicant must satisfactorily analyze and quantitate blood alcohol in "proficiency samples" provided by HRS. HRS approves this submitted procedure by issuing a permit to the technician. Rule 10D-42.030(3). ("The permit shall be issued for a specific method performed by the permittee in the designated laboratory facility.") Thereafter, every three months,[11] HRS sends the permittee control samples, denominated "proficiency" samples, which he or she must test. Test results from this analysis must match the analysis of these "proficiency" samples done by recognized referee laboratories around the country. These permits must be renewed annually based upon written application and are conditioned upon "regular participation and demonstration of proficiency" by the permittee in analyzing blood samples submitted by the department.[12] The rules also mandate automatic termination of the permit upon unsatisfactory performance on two of four consecutive sets of proficiency samples or for "failure to maintain blood or breath alcohol testing equipment in proper working order." Rule 10D-42.032(4). This permit must be renewed annually. As these rules illustrate, HRS has established a procedure of blind testing of permittees to insure the reliability of the testing performed and has not promulgated separate procedures for maintenance, calibration, testing, upkeep, or repair of blood testing equipment.
The trial court granted defendant's motion to suppress the blood test results, ruling that, because HRS had failed to promulgate rules and regulations establishing standards for use, maintenance, testing, and upkeep of the gas chromatograph, there was no procedure that assured accuracy of blood tests done on such equipment as required by section 316.1932(1)(f)1. The trial court similarly ruled that the lack of statewide standards governing the administration and analysis of blood samples as required by the same statute amounted to a violation of defendant's constitutional rights of due process and equal protection.
In State v. Burke, 599 So.2d 1339 (Fla. 1st DCA 1992), the First District Court of Appeal recently held that HRS has substantially complied with the mandate set forth by the legislature in section 316.1932(1)(f) by adopting the blood alcohol testing rules contained in rule 10D-42.028.030 of the Florida Administrative Code; therefore, the results of blood tests administered pursuant to these rules are admissible evidence.[13]
*1386 We agree with the First District that the rules adopted by HRS for blood alcohol testing meet the requirements of section 316.1932(1)(f)1, Florida Statutes;[14] but we also question whether, in the present case, section 316.192(1)(f)1 is the statute that must be complied with. The legislature has enacted two statutes that authorize the withdrawal of blood for the purpose of determining the alcohol content of the blood. Section 316.1932 provides that "any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state" shall be deemed to have consented to an approved blood test for the purpose of determining the alcohol content of the blood if such person (1) appears for treatment at a hospital, clinic, or other medical facility as a result of his involvement as a driver in a motor vehicle accident, and (2) the administration of a breath or urine test is impractical or impossible. Section 316.1933 provides that if a law enforcement officer has probable cause to believe that a motor vehicle driven by, or in the actual physical control of, a person under the influence of alcoholic beverages has caused the death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer, to a test of his blood for the purpose of determining the alcoholic content thereof. The latter statute applies to the present case.
Section 316.1933 does not have language paralleling the key language of paragraph (1)(f) of section 316.1932 relied on by defendant; instead, paragraph (2)(b) of section 316.1933 requires that the chemical analysis of the person's blood:
must have been performed substantially in accordance with methods approved by the Department of Health and Rehabilitative Services and by an individual possessing a valid permit issued by the department for this purpose. The Department of Health and Rehabilitative Services may approve satisfactory techniques or methods, ascertain the qualifications and competence of individuals to conduct such analysis, and issue permits which will be subject to termination or revocation at the discretion of the department.
§ 316.1933, Fla. Stat. (1989).
Sections 316.1932 and 316.1933 have similar, but clearly independent functions and the language of the two statutes is different. Section 316.1933 does not reference or incorporate the testing provision of section 316.1932(1)(f). The legislature has maintained this same dichotomy in the subsequent legislation concerning operation of a watercraft while intoxicated. The "driving privilege" statute incorporates 316.1932(1)(f), but the probable cause statute does not. The probable cause statute incorporates section 316.1933(2). Compare § 327.352(1)(d), Fla. Stat. (1989), with §§ 327.353(2), and 327.354(3), Fla. Stat. (1989). See also §§ 790.153-.157, Fla. Stat. (1991) (use of firearm while intoxicated). Perhaps the legislature perceived a substantive distinction between the procedure that should be followed in developing the rules for testing blood where the power to undertake this physical invasion was "implied" by statute as a condition of obtaining a driver's license and the procedure deemed appropriate where law enforcement has probable cause to believe the driver had caused death or serious injury through driving under the influence of alcohol.
Section 316.1934 provides:
[T]he results of any test administered in accordance with s. 316.1932 or s. 316.1933 and this section shall be admissible *1387 into evidence when otherwise admissible... . (emphasis added).
We can find no basis to conclude that section 316.1932 controls availability of the section 316.1934 presumption in the case where a blood sample is taken pursuant to section 316.1933.
Because it appears that section 316.1932 does not control in this case, we must consider whether the procedure utilized by HRS complies with the terms of sections 316.1933(2)(b) and 316.1934. Sections 316.1933(2)(b) and 316.1934(3) require that a chemical analysis of a person's blood be performed substantially in accordance with methods approved [not "adopted"] by HRS and by a person possessing a valid permit issued by HRS for this purpose. This is exactly the procedure that was followed in these cases. HRS had approved the specific method proposed by the FDLE toxicologist in his application and had issued a permit to him to conduct blood analysis using that specific method.
Unlike the problem we encountered with breath analysis pursuant to section 316.1932 in State v. Reisner, 584 So.2d 141, rev. denied, 591 So.2d 184 (Fla. 1991), the HRS procedure for testing blood under section 316.1933 has been formally adopted in rules. The rule procedure is designed to assure accuracy through approval of specific testing techniques and frequent quality control checks. Although there are no equipment testing procedures specified in the body of the rule, such procedures may not be necessary. The testimony in this case establishes that this procedure adopted by HRS tests both the permittee and the equipment. The record is devoid of any evidence that the testing done on blood by FDLE in compliance with these HRS rules is prone to inaccuracy or, indeed, that the HRS-approved technique has ever produced any inaccurate test result.[15] Nor is there any evidentiary basis to conclude that a single, uniform test method is necessary or practical. The state met its burden at the hearing. Where HRS has promulgated rules required by 316.1933 and the state has followed the rules in conducting the test of defendants' blood, the presumption applies. The burden then shifts to defense to prove the regulations are substantially unsound to rebut the presumption. Robertson v. State, 604 So.2d 783, 789 (Fla. 1992).
We agree with the state's contention that the order of suppression should also be reversed because the trial court erred in not affording the state an opportunity to attempt to introduce the defendant's blood test results using traditional evidentiary techniques. This issue was resolved by the Florida Supreme Court in Robertson. Such evidence would be admissible if the state could satisfy the traditional predicates for admissibility, including the qualifications of the persons taking the blood and conducting the test, the reliability of the test, and the meaning of the test results. Id. at 790. See also, Miller v. State, 597 So.2d 767 (Fla. 1991).
Because the question presented by this appeal is one of great public importance, we certify to the Florida Supreme Court the following questions:
CAN THE STATE INTRODUCE INTO EVIDENCE PURSUANT TO SECTION 316.1934 BLOOD SAMPLE TESTS RESULTS EVEN THOUGH HRS HAS NOT ADOPTED RULES GOVERNING TESTING AND MAINTENANCE OF EQUIPMENT APPROVED FOR USE IN THE TESTING OF BLOOD SAMPLES?
CAN THE STATE INTRODUCE INTO EVIDENCE PURSUANT TO SECTION 316.1934 BLOOD SAMPLE TEST RESULTS CONDUCTED IN ACCORDANCE WITH THE HRS RULES PROMULGATED AS 10D-42.028, ET SEQ.?
REVERSED and REMANDED.
COBB, J., concurs.
DIAMANTIS, J., concurs in result only, with opinion.
*1388 DIAMANTIS, Judge, concurring in result only.
I concur in the result of the majority opinion which reverses the trial court's order suppressing the results of appellee's blood alcohol test and in the questions certified to the Florida Supreme Court.
However, I cannot subscribe to any suggestion that the legislature intended different requirements regarding the administration of blood tests under section 316.1932(1)(f) and sections 316.1933(2)(b) and 316.1934(3) of the Florida Statutes (1989), depending on whether the method of blood testing is required to be "adopted" or "approved". There is no rational basis to draw a distinction between blood tests in a section 316.1932 DUI case and a section 316.1933 case of driving a motor vehicle while under the influence causing death or serious bodily injury. If the language in sections 316.1933(2)(b) and 316.1934(3) of "approved methods" is to be construed to require less stringent criteria for assuring reliable blood test results, then we are faced with the question of whether such a distinction is reasonable because the effect of such a construction is to require greater reliability for the lesser offense encompassed by section 316.1932. In order to avoid such a construction and because the provisions of section 316.1933 augment the provisions of section 316.1932, I conclude that the provisions of these two sections as well as the applicable provisions of section 316.1934(2) and (3) were intended to be read in pari materia.
In the instant case, a licensed operator, whose testing methods were approved by HRS as part of the licensing procedure, performed the blood test on appellant. There is no indication that the operator deviated from the approved method or that the utilized method would not provide accurate results. Thus, appellee's blood test results are admissible under sections 316.1932(1)(f), 316.1933(2)(b) and 316.1934(2) and (3) of the Florida Statutes (1989) and rules 10D-42.028 through 10D-42.030 of the Florida Administrative Code. This evidence would also be admissible if the state is able to satisfy the traditional predicates for admissibility as stated in the majority opinion.
NOTES
[1] Review of this order is proper pursuant to the ruling in State v. Saufley, 574 So.2d 1207 (Fla. 5th DCA 1991).
[2] Whether the blood was drawn pursuant to section 316.1933, Florida Statutes (1989) has not been made an issue in this case. Defendant's first Motion to Suppress, in fact, challenges the sufficiency of the requesting officer's probable cause to believe there was serious bodily injury.
[3] § 316.193, Fla. Stat. (1989).
[4] § 843.15(1)(a), Fla. Stat. (1991).
[5] § 316.192, Fla. Stat. (1989).
[6] § 316.061(1), Fla. Stat. (1989).
[7] The "due process" claim is based on the lack of adequate standards as required by section 316.1932(1)(f)1.
[8] "Equal protection" is based on the difference in treatment of blood and breath tests.
[9] Fla. Admin. Code Rule 10D-42.028.
[10] The record does not disclose whether such procedures include any maintenance or testing of equipment.
[11] Rule 10D-42.030 does not specify the minimum frequency or timing of "proficiency" sample tests performed by permittees, but in light of the requirement of the rules that the proficiency testing be "regular," and in light of the evidence in this record that the proficiency testing is done at least every three months by HRS, there is no basis to conclude such a method of testing is inherently defective. Moreover, section 316.1934 expressly provides that insubstantial differences between approved techniques and actual testing procedures in any given case do not invalidate the test results for purposes of the presumption.
[12] Fla. Admin. Code Rule 10D-42.031.
[13] Section 316.1932(1)(f) provides:

[T]he tests determining the weight of alcohol in the defendant's blood shall be administered at the request of a law enforcement officer substantially in accordance with rules and regulations which shall be adopted by the Department of Health and Rehabilitative Services. Such rules and regulations shall be adopted after public hearing, shall specify precisely the test or tests which are approved by the Department of Health and Rehabilitative Services for reliability of result and facility of administration, and shall provide an approved method of administration which shall be followed in all such tests given under this section.
[14] Defendant urges that section 316.1932(1)(f) requires HRS adopt rules that include the testing and maintenance of blood testing equipment similar to the requirements for breath testing equipment. See State v. Reisner, 584 So.2d 141, 144, 145 (Fla. 5th DCA), rev. denied, 591 So.2d 184 (Fla. 1991). Reisner was principally concerned, however, with the requirement that the rules governing the testing of breath equipment be properly promulgated as required by the statute, not so much with the question of what rules were necessary.
[15] The record does show that a standard deviation is inherent in all gas chromatography testing.