609 So.2d 613 (1992)
STATE of Florida, Appellant,
v.
Sydney ROCHELLE, Kenneth Comrey, and Alex Atchison, Appellees.
No. 91-3398.
District Court of Appeal of Florida, Fourth District.
July 22, 1992.
Opinion Modified on Motion for Rehearing and/or Clarification November 18, 1992.
*614 Robert A. Butterworth, Atty. Gen., Tallahassee, and Melynda L. Melear, Asst. Atty. Gen., West Palm Beach, for appellant.
Alan H. Schreiber, Public Defender, and Diane M. Cuddihy, Asst. Public Defender, Fort Lauderdale, for appellee-Comrey.
PER CURIAM.
The county court entered an order stating findings of fact and conclusions of law, as well as three issues of great public importance, and certified the order for review in this court pursuant to Florida Rule of Appellate Procedure 9.160. This court determined the subject matter could be reviewed under rule 9.030(b)(4)(B) because it would have been reviewable in the circuit court under rule 9.140(c)(1)(B), and by earlier order accepted the appeal.
Primarily, the appeal concerns the admissibility at trial, in driving-while-under-the influence proceedings, of breathalyzer test results obtained during the period after February 1986 and prior to August 1, 1991, when the agency administering the tests was using as the template or guideline for periodic testing of the equipment a form *615 that varied somewhat from that which had been incorporated in the pertinent rules as then written. The county court determined that such test results were not admissible in evidence. We reverse and remand.
The questions certified by the county court as questions of great public importance, together with the county court's answers to them, are as follows:
I.A. Are rules 10D-42.023 and 10D-42.024, Florida Administrative Code, as they existed prior to August 1, 1991, void for vagueness? Yes.
B. If so, does this preclude the State's use of results from tests using breath-testing instruments in a criminal trial? Yes.
II. A. Is the use of different (not uniform) forms, reflecting different monthly maintenance procedures, for testing breath-testing equipment a denial of equal protection? Yes.
B. If so, does this preclude the State's use in a criminal trial of test results from the breath-testing instruments so tested? Yes.
III. Should revised rules 10D-42.023 and 10D-42.024, effective August 1, 1991, be applied retroactively? No.
We agree with the county court's conclusion on Issue III, cf. Drury v. Harding, 461 So.2d 104 (Fla. 1984), but disagree on all others. The conclusion regarding Issue III has no impact on admissibility of the test results in the instant case, however, when the county court's conclusions on the other issues are determined to be incorrect. Accordingly, we reverse the county court's conclusion that breathalyzer test results are not admissible into evidence which were obtained before the amended administrative rules went into effect on August 1, 1991; and while a form other than that previously promulgated for the purpose was used in Broward County for monthly checking of test equipment.
Other issues raised by the state in its briefs are without merit, and we shall not discuss them, other than to observe that a DUI defendant may raise in the trial court issues relating to the adequacy of the rules governing testing of breath-testing equipment for accuracy and reproducibility, and the admissibility of test results obtained with equipment periodically tested by a given procedure. State v. Reisner, 584 So.2d 141, 142 (Fla. 5th DCA), rev. denied, 591 So.2d 184 (Fla. 1991).

I

The Issue of Void for Vagueness
As a sister court noted in State v. E.L., 595 So.2d 981, 983 (Fla. 5th DCA), juris. accepted, 601 So.2d 551 (Fla. 1992), the United States Supreme Court described the void-for-vagueness doctrine in Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983), as follows:
As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.
(Citations omitted.)
Accordingly we agree with the well-reasoned opinion of the Honorable David A. Demers in State v. Westerberg, 16 F.L.W. 149 (Fla. Pinellas Cty. Ct. July 19, 1991), that void-for-vagueness doctrine is inapplicable in the present circumstances, where the issue is the adequacy of administrative rules to give guidance to professionals testing equipment which is used for blood-alcohol testing for evidentiary purposes. We conclude, as did Judge Demers, as well as the Second District Court in its recent opinion in State v. Berger, 605 So.2d 488 (Fla. 2d DCA 1992), that the administrative scheme is sufficient to ensure reliability of results although the standards set forth for monthly and annual testing are not specifically stated in the rules. In this respect we disagree with the court in Reisner.
Moreover, we think that if void-for-vagueness doctrine were applicable, the rules and equipment testing procedures actually used would still pass muster, as the following analysis will show.
*616 Rule 10D-42.023 requires proper calibration and accuracy checking by authorized personnel of breath testing machines. Rule 10D-42.024 calls for at least monthly checking of such equipment by a technician to assure general cleanliness, appearance and accuracy. In September 1982 the Department of Health and Rehabilitative services incorporated into the rule a form 1514 which serves as a guide for the steps that are taken in the monthly checking of the equipment.
Rules 10D-42.023 and 10D-42.024 as they existed between February 1991 when a revised form is said to have come into use in many parts of the state, and before the August 1, 1991, amendment promulgating the new form, were not void for vagueness. We do not think we are in conflict with State v. Reisner, 584 So.2d 141 (Fla. 5th DCA), rev. denied, 591 So.2d 184 (Fla. 1991), when we reach this seemingly contrary conclusion.
The Reisner court held that with the original form 1514 incorporated, rule 10D-42.024, the rule adopted pursuant to section 316.1932(1)(f)1. to govern monthly and annual testing of intoxilyzer equipment for accuracy and reproducibility, was sufficiently specific. The difficulty the Reisner court perceived lay in the fact that the machine used in that case was tested, not by application of the original form 1514, but the revised and unpromulgated form. This form was essentially the same as the promulgated form, with the exception that it had three added spaces for testing of the machine for its ability to distinguish acetone from grain alcohol. The Reisner court found that since the rule without the promulgated form could not pass constitutional muster, and since the unpromulgated form could not be considered to be part of the rule, the blood alcohol test results obtained with the machine whose accuracy and reproducibility had been checked using the new form were properly excluded.
Key to this conclusion in Reisner was the fact that while the state argued that the revised form was substantially similar to the original form and therefore the equipment check was in substantial compliance with the formal rule as promulgated by the Department of Health and Rehabilitative Services, the state had "produced no expert to explain that any deviation in the procedure used by the two forms was insubstantial or unimportant." 584 So.2d at 144. In Reisner no testimony at all had been furnished by either side; there was nothing but legal argument.
In the instant case, however, much of the extensive expert testimony taken, properly understood, showed clearly the insubstantiality of the new form's deviation from the promulgated form. The new form required putting the equipment through the same paces as the original form, but in addition provided for checking whether the machine could differentiate between acetone and grain alcohol found in the test sample.
Removal of a machine from service for failing the acetone test could not possibly injure the driver, alleged to have been driving under the influence, whose breath sample was analyzed using a machine that had passed the acetone test. If the machine failed the test but was not removed from service, the driver whose breath sample was analyzed with that machine was in the exact same place as he would have been had the machine been checked by use of the promulgated form without the added fillip.
The use of the additional test for acetone could be advantageous to the driver if he were one of the relatively few persons who produce acetone metabolically; yet it was superfluous to the required accuracy and reproducibility testing procedure. The introduction of the acetone test impacted not at all on the driver's interest that the equipment be as accurate and its results as reproducible as required under the preexisting rule with the previously incorporated form 1514.
We find that results of breath tests given during the interval of concern here by licensed operators using equipment that had been tested and calibrated by either the promulgated form or a variant form adding the acetone test can be presumed reliable and are admissible in evidence. Results of breathalyzer tests obtained in *617 substantial compliance with the approved techniques and procedures are admissible. See Ridgeway v. State, 514 So.2d 418 (Fla. 1st DCA 1987). Here, use of the variant form for periodic checking of the equipment did not take the procedures employed out of substantial compliance. Cf. State v. Burke, 599 So.2d 1339 (Fla. 1st DCA 1992).
We acknowledge that the above analysis fails to address the challenge based on the fact that the scheme that is employed for annual testing is not incorporated in rule 10D-42.023, which at times pertinent provided merely that a form prepared by the Department was to be used. We would analogize to a holding in State v. Bender, 382 So.2d 697 (Fla. 1980). In Bender, there was no claim that the manufacturers' manuals were not available, but only that they were not incorporated in the rule. We understand similarly that here a Department form to be used as a template for annual testing was available for use by the professionals who test DUI equipment. The Bender court held that the failure to incorporate manufacturer's manuals in the rule at issue there did not violate the due process and equal protection rights of defendants charged with driving under the influence. Void for vagueness doctrine is closely akin to equal protection doctrine. We do not think that failure to incorporate in the instant rule the form that guided annual equipment checking made the rule void for vagueness.

II

The Issue of Equal Protection
The next issue is whether use of different forms for periodic testing of breathalyzer equipment for accuracy and reproducibility constitutes denial of equal protection. The above discussion bears also on this issue, for if the variant forms did not vary substantially from the adopted form, and their use did not compromise the reliability of blood-alcohol test results, the use of different forms would appear not to be discriminatory.
Another perspective on this issue should also be taken. Equal protection in matters like the present one generally concerns laws which themselves are said to discriminate, or improper discrimination between persons in like circumstances in enforcement of a law. There is a presumption that a prosecution for violation of a criminal law is undertaken in good faith and in nondiscriminatory fashion in fulfillment of a duty to bring violators to justice. Thus, the burden is on the defendant to show otherwise.
Here, the thesis is not that the DUI laws discriminate invidiously against someone or some group. The reasoning appears to be that law enforcement officials or prosecutors engaged in discriminatory enforcement of the laws, through the fact that alternative ways of checking breath-testing equipment were used.
The facts relied on below are not ones directly concerning these defendants, or even a larger group of defendants in Broward County Court. Indeed, the evidence makes clear a particular variant form was exclusively used at times pertinent by the Broward County breathalyzer technicians, and machines that failed the test were withdrawn from service.
The conclusion reached below was based on information that different enforcement officials in different parts of the state used several different variant 1514 forms, while some may have continued to use the adopted form. The court found that because the procedures used to test the equipment after February 1986 "were not uniformly applied to all persons arrested who submitted to breath testing," the procedures were in violation of their right to equal protection. We shall not quibble over the fact that the subject procedures are applied to the testing equipment and not to persons.
Even if the reliability of test results from machines checked by different procedures were questionable  which our earlier discussion would imply was not the case, as the guiding forms used did not differ from each other substantially  one seeking relief on the basis of discrimination would have to show that he was adversely affected. Here the issue is one presented and *618 dealt with "in the air": it is apparently that because different forms were used in different parts of the state enforcement was necessarily discriminatory  against all, one infers.
As is clear from the cases, one who discovers he was tested with an inaccurate machine or a machine whose accuracy is suspect because of the way the machine was checked for accuracy and reproducibility can attack admission of the test results in his case or the applicability of the statutory presumptions on which the state relies. Similarly, one presumes a diabetic who produces acetone metabolically can attack the reliability of the test result in his case if the machine used does not discriminate between alcohol and acetone. Notwithstanding the foregoing, one cannot claim discriminatory treatment if one was not unfairly treated, merely because it is possible someone was unfairly treated.

III

Summary
The rules governing methods of maintaining and testing for accuracy and reproducibility equipment used to determine blood alcohol content were not void for vagueness during the time the variant form rather than the promulgated form for checking breathalyzer equipment was used in Broward County. The use of somewhat different forms for such equipment testing in different parts of the state could not be determined to be discriminatory en masse. The rules as amended effective August 1, 1992, could not be applied retrospectively, but there was no need to do so, as the variant form used in Broward County was substantially the same as the promulgated form.
GLICKSTEIN, C.J., and ANSTEAD and HERSEY, JJ., concur.

ON MOTION FOR REHEARING AND/OR CERTIFICATION
PER CURIAM.
We have carefully considered the motion for rehearing and/or certification, and the state's response thereto, the writers of both of which are to be commended. We deny the motion for rehearing, but grant the motion to certify the following questions:
A. ARE RULES 10D-42.023 AND 10D-42.024, FLORIDA ADMINISTRATIVE CODE, AS THEY EXISTED PRIOR TO AUGUST 1, 1991, VOID FOR VAGUENESS?
B. IF SO, DOES THIS PRECLUDE THE STATE'S USE OF TEST RESULTS OBTAINED ON BREATH-TESTING MACHINES MAINTAINED PURSUANT TO THOSE RULES IN A CRIMINAL TRIAL?
C. IS THE USE OF DIFFERENT (NOT UNIFORM) FORMS, REFLECTING DIFFERENT MONTHLY MAINTENANCE PROCEDURES FOR BREATH-TESTING EQUIPMENT, A DENIAL OF EQUAL PROTECTION?
D. IF SO, DOES THIS PRECLUDE THE STATE'S USE OF TEST RESULTS FROM THE BREATH-TESTING INSTRUMENTS SO TESTED IN A CRIMINAL TRIAL?
Additionally, we modify that section of the opinion filed July 22, 1992, that is entitled I. The Issue of Void for Vagueness, by making the following insertions. At the beginning of the section we place the following:
The present text of the section on void for vagueness doctrine follows the above insertion. At the end of the present text of the same section we add the following:
GLICKSTEIN, C.J., and ANSTEAD, J., concur.
HERSEY, J., dissents without opinion.