FRANK, Judge.
On January 11, 1992, a vehicle Arthur Hill was operating collided with a concrete barrier. In the car at the time were three passengers, two of whom, with Hill, were rushed to a nearby hospital. The third passenger died at the scene. A traffic homicide investigator observed empty beer cans and a whiskey bottle in the general vicinity of the wreck and ordered that blood be drawn from the car’s surviving occupants at the hospital. A laboratory technician withdrew blood samples from each passenger which were analyzed pursuant to the alcohol dehydrogenase method. Hill’s blood test disclosed an alcohol level of .255. Thus, Hill was charged with one count of manslaughter, two counts of driving with a suspended license, and four counts of driving under the influence resulting in death, serious bodily injury, or property damage.
Hill sought to exclude the result of his blood test asserting that the Department of Health and Rehabilitative Services (HRS) had not adopted rules regulating the “use, maintenance, testing, and upkeep” of the alcohol dehydrogenase equipment, and had not provided detailed regulations specifying the proper method for administering the test.
The record has come to us with little more than Hill’s motion to suppress and a two-page transcript of the associated hearing. No evidence was presented to explain the alcohol dehydrogenase procedure or to attest to its accuracy or reliability. Instead, the parties simply stipulated that the result of Hill’s blood test would be sup-' pressed on the same grounds followed in State v. Robinson, No. CF91-1279A1-XX (Fla. 10th Circuit March 18, 1992). For that reason we have been compelled to review the Robinson order to resolve the instant appeal initiated by the state. In a few words, the Robinson order is substantively unacceptable. The Robinson trial court’s pivotal conclusion that the “proficiency tests of the technicians” were not conducted pursuant to “standards for proficiency ... written, duly promulgated and enforced” was erroneous. We join in the fourth district’s view, expressed in State v. Rochelle, 609 So.2d 613 (Fla. 4th DCA 1992), that the administrative scheme set forth in rules 10D-42.030-.032 of the Florida Administrative Code sufficiently ensures reliability of blood test results even though the standards for monthly and annual proficiency testing are not detailed in the rules. See also, State v. Berger, 605 So.2d 488 (Fla. 2d DCA 1992) (the failure of *744 HRS to publish a rule providing a test for reliability at monthly and annual inspections does not preclude the state’s use of breath test results in a criminal trial). Hence, we reject the trial court’s disposition of Hill’s suppression motion.
In spite of the agreement, concurred in by the trial court, permitting the Robinson order to control the present matter, the record before us does not disclose an essential factual determination — that the state substantially complied with section 316.1933(2)(b), Florida Statutes (1991), and the relevant rules adopted by HRS pursuant to the statute.[1] Therefore, in accordance with section 316.1933’s mandate, the state upon remand shall have the opportunity to demonstrate, by affidavit or otherwise, see section 316.1934(5), Florida Statutes (1991), that an approved blood-alcohol test was used and that the technician who conducted the test possessed a valid permit from HRS. See Robertson v. State, 604 So.2d 783 (Fla.1992). Of course, once compliance with section 316.1933 is established, Hill is entitled to challenge the accuracy of the machine used in the test as well as the reliability of the results it produced. Robertson; Rochelle.
Accordingly, we reverse and vacate the suppression order and remand for further proceedings consistent with this opinion.
CAMPBELL, A.C.J., and BLUE, J„ concur.

. Section 316.1933(2)(b), Florida Statutes (1991), contains the following language:
A chemical analysis of the person’s blood to determine the alcoholic content thereof must have been performed substantially in accordance with methods approved by the Department of Health and Rehabilitative Services and by an individual possessing a valid permit issued by the department for this purpose. The Department of Health and Rehabilitative Services may approve satisfactory techniques or methods, ascertain the qualifications and competence of individuals to conduct such analyses, and issue permits which will be subject to termination or revocation at the discretion of the department.